Janice BINKLEY, Petitioner,

v.

The PEOPLE of the State of Colorado, Respondent.

No. 84SC165.

Supreme Court of Colorado, En Banc.

April 21, 1986.

Wade H. Eldridge, Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for respondent.

QUINN, Chief Justice.

We granted certiorari to consider the decision of the court of appeals in *People v. Binkley*, 687 P.2d 480 (Colo.App.1984), which, in affirming the conviction of the defendant, Janice Binkley, for felony theft and conspiracy to commit felony theft, held that a prospective juror, who had previously received a law degree and at one time had been licensed to practice law but had let her license expire in 1946 and had not practiced law since that time, was not a "lawyer" within the meaning of section 16–10–103(1)(k), 8 C.R.S. (1978), and that, therefore, the trial court properly denied the defendant's challenge for cause directed to the prospective juror. We conclude that the term "lawyer," as used in section 16–10–103(1)(k), means a person who is currently licensed to practice law in one of the jurisdictions in the United States, and we accordingly affirm the judgment of the court of appeals.

## I.

The defendant was charged with theft and conspiracy to commit theft of two leather coats, valued at two hundred dollars or more, from Hurley's House of Leather in Denver, Colorado, on September 15, 1981. During jury selection a prospective juror was called into the jury box and informed the court that she received a law degree from the University of Montana in 1942, worked for a brief period in a law office in Montana, and then examined oil and gas leases for an oil company for three years. The juror stated that after leaving the oil company in 1946 she let her law license expire. In response to questioning by the court, the juror acknowledged that she had never handled a criminal case, in fact had never previously appeared in court, and further stated that, if selected as a juror, she would fairly and impartially decide the case based on the law and the evidence. Defense counsel did not interrogate the juror, but challenged the juror for cause as a "lawyer" under section 16–10–103(1)(k).[1] The trial court denied the challenge, ruling that "since [the juror] is not licensed and has not practiced since 1946 ... the statute clearly does not apply." Defense counsel then exercised a peremptory challenge against the juror and ultimately exhausted all remaining peremptory challenges in the course of jury selection.

The defendant was found guilty as charged, and her conviction was affirmed by the court of appeals, which, with one judge dissenting, held that "the word 'lawyer,' as used in § 16–10–103(1)(k), includes only those persons licensed to practice law." *Binkley*, 687 P.2d at 482. We thereafter granted certiorari.

## II.

Reduced to its plain terms, the defendant's argument is that section 16–10–103(1)(k), 8 C.R.S. (1978), was intended to exclude from jury service those persons who pose a risk of excessively influencing other members of the jury by reason of their legal education and that, therefore, the term "lawyer" in that section should be construed to apply not only to those attorneys who are presently licensed to practice law but also to anyone formally trained in the law, including for example, unlicensed graduates of law schools and law students. For reasons hereinafter set forth, we find the defendant's argument devoid of merit.

## A.

Section 16–10–103(1)(k), 8 C.R.S. (1978), requires a trial court to sustain a challenge for cause regardless of the prospective juror's state of mind so long as it is shown that the juror "is a lawyer or a compensated employee of a public law enforcement agency."[2] In addressing the breadth of the defendant's proposed construction of the term "lawyer," we must bear in mind that a representative cross-section of the community is an essential component of the Sixth Amendment right to a trial by jury. As the United States Supreme Court observed in *Taylor v. Louisiana*, 419 U.S. 522, 530, 95 S.Ct. 692, 698, 42 L.Ed.2d 690 (1975):

> The purpose of a jury is to guard against the exercise of arbitrary power—to make available the commonsense judgment of the community as a hedge against the overzealous or mistaken prosecutor and in preference to the professional or perhaps over-conditioned or biased response of a judge.... This prophylactic vehicle is not provided if the jury pool is made up of only special segments of the populace or if large, distinctive groups are excluded from the pool. Community participation in the administration of the criminal law, moreover, is not only consistent with our democractic heritage but is also critical to public confidence in the

---

1. In challenging the prospective juror, defense counsel stated: "I have no questions of [the juror]. I think the statute may be unclear, but I am going to move for her exclusion for cause."

2. Crim.P. 24(b)(1)(XI) also provides for a challenge for cause when the juror is a "lawyer." Our construction of the term "lawyer" in section 16–10–103(1)(k), 8 C.R.S. (1978), applies equally to Crim.P. 24(b)(1)(XI).

fairness of the criminal justice system. Restricting jury service to only special groups or excluding identifiable segments playing major roles in the community cannot be squared with the constitutional concept of jury trial.

In addition to reducing the inclusiveness and representativeness of the jury pool, broad categorical exemptions of potential jurors place a disproportionate burden on those who are not exempt. ABA, *Standards Relating to Jury Use and Management,* Commentary at 61 (1983). While a state may prescribe qualifications for jurors and provide reasonable exemptions, jury panels must remain fairly representative of the community. *Taylor v. Louisiana,* 419 U.S. at 538, 95 S.Ct. at 701. The constitutional right to a jury trial requires that "a significant state interest be manifestly and primarily advanced by those aspects of the jury-selection process, such as exemption criteria, that result in the disproportionate exclusion of a distinctive group." *Duren v. Missouri,* 439 U.S. 357, 367–68, 99 S.Ct. 664, 670, 58 L.Ed.2d 579 (1979) (footnote omitted).

We point out that section 16–10–103(1)(k) does not operate automatically to exempt or disqualify lawyers from jury service, but instead provides both the prosecution and the defense with the right to challenge for cause any lawyer or compensated employee of a public law enforcement agency on that basis alone, without regard to whether the challenging party establishes an actual bias on the part of the juror. The rationale underlying the challenge with respect to law enforcement employees was discussed in *People in the Interest of R.A.D.,* 196 Colo. 430, 432, 586 P.2d 46, 48 (1975), where the court stated:

> Apparently the rationale is that one who is employed by a law enforcement agency is likely to favor the group with whom he comes in daily contact and upon whom his livelihood depends. To insure that a jury is impartial in both fact and appearance, a prospective juror who has even a tenuous relationship with any prosecutorial or law enforcement arm of the state

should be excused from jury duty in a criminal case.

It could well be that the legislature acted out of a similar concern in creating the causal challenge respecting a lawyer—that is, a concern that the lawyer by reason of professional experiences and daily contacts with the justice system might possibly incline to one side or the other in a criminal case. On the other hand, it is equally plausible that the legislature created the statutory challenge to avoid the risk of a lawyer-dominated jury. An argument might also be made that the legislature acted out of both concerns or perhaps even others in enacting section 16–10–103(1)(k). Where, as here, any one of several alternative rationales might account for the statutory enactment, our principal focus must necessarily center on the statutory terminology employed by the legislature in the statute itself.

### B.

It is a cardinal rule of statutory construction that words are to be construed according to their "common usage" and that a term which has acquired a technical or particular meaning, whether by legislative definition or otherwise, should be construed according to its acquired meaning. § 2–4–101, 1B C.R.S. (1980). Since the legislature did not define the word "lawyer" in section 16–10–103, 8 C.R.S. (1978), we look first to the commonly accepted meaning of that term. We then consider whether the word "lawyer" has acquired a technical or particular meaning—such as, for example, a meaning given to the term by statutory law or judicial decision—in which case the technical meaning should control.

The common definition of "lawyer" is "a specialist in or a practitioner of law"—that is, one whose profession "is to conduct lawsuits for clients or to advise as to the prosecution or defense of lawsuits or as to legal rights and obligations in other matters." *Webster's Third New International Dictionary* 1280 (1971). As long ago as 1908 this court observed that the term "lawyer" is generally understood to refer to a professional person "legally authorized

to appear for and represent clients who are parties to causes in courts of record." *People ex rel. Colorado Bar Association v. Erbaugh,* 42 Colo. 480, 487–88, 94 P. 349, 352 (1908). This commonly accepted meaning of the term refutes the notion that a lawyer is anyone who has studied law, even though he or she may not have fulfilled the qualifications necessary to engage in the practice of law.

Although the term "lawyer" has also been used in a technical sense over the years, the technical meaning of the term is not substantially different from its commonly accepted meaning. The word "lawyer" is synonymous with an attorney at law, *People ex rel. Colorado Bar Association v. Taylor,* 56 Colo. 441, 443, 138 P. 762, 763 (1914), and thus refers to those who, by reason of having been licensed to practice law in Colorado, can appear on behalf of a party in any court of record in the state and practice "as an attorney and counselor-at-law" according to the laws and customs of the state of Colorado during good behavior. § 12–5–101, 5 C.R.S. (1985). Anyone advertising as a lawyer holds himself or herself out as an attorney, attorney-at-law, or counselor-at-law and, if not properly licensed, may be held in contempt of court for practicing law without a license. *People ex rel. Attorney General v. Castleman,* 88 Colo. 207, 294 P. 535 (1920); *Taylor,* 56 Colo. 441, 138 P. 762. C.R.C.P. 201.3(2) defines the "practice of law" as including "employment as a lawyer," thereby furnishing further proof that the term "lawyer" technically means a person licensed to practice law.

■ "[I]t is to be presumed that a legislature is cognizant of and adopts the construction which prior judicial decisions have placed on particular language when such language is employed in subsequent legislation." *People v. Cooke,* 150 Colo. 52, 62,

370 P.2d 896, 901 (1962). Section 16–10–103(1)(k) was enacted in 1972, long after this court's decisions construing the term "lawyer" as a person licensed to practice law. In light of both the commonly used and technically acquired meaning of the term "lawyer," we construe that term in section 16–10–103(1)(k) to mean a person who is licensed to practice law in one of the states or federal territories at the time the person is called into the jury box for voir dire examination. Because attorneys licensed in other states or territories may be permitted to appear specially in a Colorado court for a particular case, § 12–5–113, 5 C.R.S. (1985), the same rationale for granting a challenge for cause to an attorney licensed to practice in Colorado should apply equally to an attorney licensed to practice elsewhere in the United States.

### III.

■ In arguing for a contrary construction, the defendant claims that a construction of the term "lawyer" to include unlicensed law school graduates and other persons formally trained in the law is necessary to avoid the risk of undue influence by the law-educated juror over other jurors. We point out, however, that if the legislature intended to include these groups of persons within the challenge for cause created by section 16–10–103(1)(k), it is reasonable to assume that it would have cast the statutory language in those specific terms and would not have used the much more restrictive word "lawyer" in the statute. The commonly accepted as well as the technically acquired meaning of the term "lawyer" adequately refutes the defendant's argument.[3]

Moreover, we note that the defendant's proposed construction of the term "lawyer" would not stop at those who earned a law degree, but rather would include all those who received some formal education or

---

**3.** If, of course, it is established on voir dire that a prospective juror, although not licensed to practice law, has such a fixed view of the law by reason of formal legal education as to prevent that juror from following the court's instructions, then either the prosecution or the defense could challenge that juror under section 16–10–

103(1)(j), 8 C.R.S. (1978), which grants a challenge for cause to a prospective juror who manifests a state of mind "evincing enmity or bias towards the defendant or the state." *See, e.g., People v. Russo,* 713 P.2d 356 (Colo.1986); *People v. Abbott,* 690 P.2d 1263 (Colo.1984); *People v. Wright,* 672 P.2d 518 (Colo.1983).

training in the law. The problems associated with this broad interpretation are obvious. Such construction would arguably include law students, persons who have taken law-related courses in college, accountants versed in tax and business law, real estate brokers knowledgeable of property law, and several other groups of persons who at some point in time received some formal instruction in particular aspects of law or the legal system. In addition to creating serious difficulties of application, the construction urged by the defendant could well lead to the exclusion of large numbers of persons from criminal juries in derogation of the representative cross-sectional concept of the jury trial. It is simply inconceivable to us that the legislature intended to subject such a broad class of persons to challenge for cause when it employed the term "lawyer" in section 16–10–103(1)(k).

We agree with the court of appeals that the trial court did not err in denying the defendant's challenge for cause to a prospective juror who, although having previously received a law degree and having been licensed to practice law for a brief period of time many years ago, was not licensed to practice law at the time of the voir dire examination in question. The judgment is accordingly affirmed.