The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Coye LOYD, Defendant–Appellant.

No. 85CA1428.

Colorado Court of Appeals,
Div. I.

Jan. 28, 1988.

Rehearing Denied Feb. 25, 1988.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Montgomery, Little, Young, Campbell & McGrew, Robert J. Beattie, Denver, for defendant-appellant.

METZGER, Judge.

Defendant, Coye Loyd, appeals the judgment of conviction of robbery entered upon a jury verdict. He asserts that the trial court erred: (1) in admitting an out-of-court photo identification and an in-court identification that he asserts resulted from an impermissibly suggestive procedure; (2) in admitting evidence of the defendant's use of aliases; (3) in admitting defendant's statements, including his use of aliases, that he made to police without having received a *Miranda* warning; (4) in requiring defendant to stand in front of the jury for 30 seconds at the close of the People's case; and (5) in refusing to instruct the jury pursuant to *United States v. Telfaire*, 469 F.2d 552 (D.C.Cir.1972). We affirm.

In the early morning hours of December 9, 1984, a lone man entered a Denver convenience store, loitered about for a time, and made a small purchase. He then jumped over the counter, threatened, robbed, and assaulted the clerk, took the money from the cash register, and fled.

When interviewed by the police immediately after the robbery, the clerk was unable to describe her assailant in detail. However, two photographs taken by a hidden surveillance camera appeared to show the robber committing the crime. Based upon his prior contacts with defendant, a police officer believed that the suspected robber was the defendant. Accordingly, a photographic lineup containing the defendant's photograph was prepared.

Three days after the robbery, a Denver police detective visited the clerk at her home. He first showed her the surveillance photographs to verify that they were taken during the robbery, rather than at some other time. She confirmed that fact. The detective then put the surveillance photos away and showed her the photographic lineup. She identified the defendant as the perpetrator, and the police obtained a warrant for his arrest, but were unable to locate him.

More than two months later, two officers drove past defendant's girlfriend's home, thinking they might find him there. They spotted a man in the yard whom they thought was the defendant and approached him to ascertain his identity. When the man began to walk away, the officers told him to "hold it," and asked him his name. He stated that his name was "Joe Kelly." The officers did not believe him, so one officer walked over to the woman and asked her the man's name. She said "Coye." The officer returned to where the man was standing with the other officer and asked his name again. He then said "Tracy Loyd." The police officers asked whether his name was Coye Loyd, and he said, "Okay, man, you got me." The defendant was then arrested and charged with the robbery.

Before trial, but after the time for filing such motions had elapsed, the defendant moved to suppress the victim's identification and he also sought to suppress the statements he made when first confronted by the police, arguing that they were inadmissible because he had not been advised pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

The trial court denied the motions on two alternative bases. First, it found them to

be untimely. In the alternative, the court determined that the identification procedure was not unduly suggestive and that the absence of *Miranda* warnings did not mandate suppression of defendant's statements because they were made during an investigatory stop and not during custodial interrogation.

At trial, the victim again identified the defendant as the robber, and she testified to her out-of-court identification. The defendant's statements to the police, including his use of the aliases, were admitted as well.

At the close of the People's case, the court, at the prosecutor's request and over defense objections, required the defendant to stand about five feet from the jury for a period of 30 seconds. The purpose of this procedure was to enable the jury to compare the defendant's appearance with the appearance of the man in the surveillance photos.

Consonant with his defense of misidentification, defendant requested that the jury instructions include a misidentification instruction pursuant to *United States v. Telfaire, supra,* but the trial court refused defendant's request.

The jury returned a guilty verdict on the robbery charge, and this appeal followed.

### I.

The defendant first argues that the photographic identification procedure was unduly suggestive and, thus, asserts that both the out-of-court and in-court identifications should have been suppressed. We do not agree.

■ For the purposes of constitutional due process analysis, which governs the admissibility of identification evidence, the threshold question is whether the out-of-court identification procedure was unduly suggestive. *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *People v. Martinez,* 734 P.2d 126 (Colo.App.1986). An identification procedure is unduly suggestive if it tends to interject an unnecessary risk of misidentifi-

cation. *People v. Madonna,* 651 P.2d 378 (Colo.1982).

Those courts which have had the opportunity to pass upon the propriety of the identification procedure used here have held that it is not unduly suggestive. *United States v. Monks,* 774 F.2d 945 (9th Cir.1985); *United States v. Brannon,* 616 F.2d 413 (9th Cir.1980), *cert. denied,* 447 U.S. 908, 100 S.Ct. 2993, 64 L.Ed.2d 858 (1980); *United States v. Irby,* 517 F.2d 506 (4th Cir.1975), *cert. denied,* 424 U.S. 973, 96 S.Ct. 1475, 47 L.Ed.2d 742 (1976); *United States v. Ervin,* 436 F.2d 1331 (5th Cir.1971); *United States v. McNair,* 439 F.Supp. 103 (E.D.Pa.1977), *aff'd,* 571 F.2d 573 (3rd Cir.1978), *cert. denied,* 435 U.S. 976, 98 S.Ct. 1626, 56 L.Ed.2d 71 (1978). These courts have reasoned that:

> "Little possibility of misidentification arises from the use of photographs depicting 'the likeness not of some possible suspect in the police files, but of the persons who actually committed the robbery ...'. [A]ny resemblance between the persons in the photographs and defendants was not only not impermissibly suggestive, but, in fact, was highly probative."

*United States v. Stubblefield,* 621 F.2d 980 (9th Cir.1980).

■ We adopt this reasoning and hold that the identification procedure used here was not unduly suggestive. The detective showed the victim the surveillance photos for the purpose of confirming at the outset that they were, in fact, taken during the robbery. After the victim had verified that the store camera had filmed the robbery accurately, and that it was not activated accidentally at some other time, the detective put away the surveillance photos. He then had the victim read the Denver police photographic lineup admonitions, and showed her the photographic lineup. The police officer made no comments while she viewed the photographic lineup and did not in any way direct her attention towards the defendant's photograph.

■ Even if we were to conclude that the procedure was unduly suggestive, we would nevertheless determine that the pho-

tographs were admissible since, under the totality of the circumstances, the identification was reliable despite the suggestive procedure. *See Manson v. Brathwaite, supra; People v. Martinez, supra.*

The trial court found that, at the time of the crime, the victim had an excellent opportunity to observe the robber. The store was well lighted, and she observed the robber face-to-face for most of the episode, including a non-traumatic observation of him while he made a purchase. Her degree of attention was high and was directed towards the perpetrator while the robbery was in progress. The photographic identification occurred only three days after the robbery, and the victim indicated strong certainty in her identification of the defendant. Although her description of the defendant immediately after the robbery was somewhat sketchy, the trial court found that to be insignificant, given the strength of the other factors. Finally, the victim testified that her photo identification was based on her view of the robber during the robbery, and not on the surveillance photos. The trial court's extensive findings and conclusions, summarizing each of the above factors, are amply supported by the record.

Accordingly, we conclude that defendant's argument concerning the trial court's refusal to suppress the victim's identification is without merit.

### II.

The defendant next argues that the trial court committed reversible error in allowing the arresting officer to testify that the defendant gave two aliases to the police before his arrest. We do not agree.

■ Courts should allow evidence concerning aliases only when proof of an alias is relevant to an issue in the case; however, the use of an alias may be relevant if the defendant seeks to avoid detection by use of the alias or if it pertains to an issue of identification. *People v. DeHerrera,* 680 P.2d 848 (Colo.1984).

■ The record here shows that, prior to the date of his arrest, defendant was well

aware that the police had a warrant for his arrest. They had attempted to execute the arrest warrant at the defendant's mother's home, where the defendant was known to reside. When the police did not find him there, they told his mother that they had a warrant for his arrest and asked her to tell him to call the police. Before the officers could locate the defendant, they received a call from him, and asked that he come to the station to discuss the robbery, but the defendant did not comply. When the police finally located him, the defendant gave them two false names.

Under these circumstances, the court properly found that the defendant's use of the alias was admissible because it was probative of his consciousness of guilt and of his desire to avoid detection. *People v. DeHerrera, supra.*

### III.

The defendant next asserts that the trial court erred in denying his motion to suppress the statements, including the aliases, he made to police prior to his arrest, because he was not advised of his *Miranda* rights. Although the People argued, and the court ruled that, this motion had been waived by virtue of being untimely filed, we address only the court's alternative ruling that the motion also failed on its merits.

■ Statements made by a defendant during custodial interrogation are admissible only if the prosecution establishes that the defendant was warned of his right to remain silent and his right to counsel prior to any questioning. *Miranda v. Arizona, supra; Jones v. People,* 711 P.2d 1270 (Colo.1986). However, questioning a suspect about his identity during a lawful investigatory detention is not custodial interrogation. *Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *People v. Koolbeck,* 703 P.2d 673 (Colo. App.1985).

The circumstances of the encounter at issue here show that the police were attempting to find defendant to execute an arrest warrant and that their detention and

questioning of him and his girlfriend were directed at that purpose. During the encounter, the police used normal tones of voice, did not draw their guns, and did not physically restrain the defendant. Thus, there were no formal indicia of arrest. Only after the defendant admitted "you got me" did the police officers arrest him.

■ On these facts, the trial court properly ruled that the statements occurred during an investigatory detention, conducted for the reasonable purpose of discovering whether the individual was the person named in the warrant. Accordingly, the defendant was not in custody, *Miranda* warnings were not required, and the trial court did not err in admitting the defendant's statements.

### IV.

The defendant next argues that the trial court committed prejudicial error in requiring him to stand in front of the jury for 30 seconds at the close of the People's case. We do not agree.

■ The prosecutor, in chambers, moved that the defendant be required to stand near the jury for the purposes of allowing the jury to observe the defendant closely. The defendant had argued at trial that he was not the person portrayed in the surveillance photos, despite the victim's identification, but during the trial he was seated approximately 20 to 30 feet from the jury. In order to resolve the issue, it was helpful for the jurors to be able to observe the defendant closely for the purpose of comparing him to the surveillance photographs. He was not required to make any unusual gestures or to speak. Under these circumstances, we perceive no abuse of the trial court's discretion. *People v. Renfrow*, 193 Colo. 131, 564 P.2d 411 (1977).

### V.

The defendant's final contention is that the trial court committed reversible error in failing to instruct the jury pursuant to *United States v. Telfaire, supra*, concerning the identification issue. We do not agree.

■ A trial court is not required to give a *Telfaire* instruction if the general instruction on the credibility of witnesses is given. *People v. Martinez*, 652 P.2d 174 (Colo.App.1981). Such an instruction was given here, and thus, an additional instruction of the *Telfaire* type was not needed.

We also reject defendant's argument that the *Telfaire* instruction should have been given because of the allegedly tainted out-of-court and in-court identifications by the victim. Since we have concluded that the trial court correctly determined that these identifications were not tainted, defendant's argument must fail.

The judgment of conviction is affirmed.

PIERCE and CRISWELL, JJ., concur.