The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Willie Glenn DANIELS, Defendant–Appellant.

No. 95CA2073.

Colorado Court of Appeals, Div. V.

April 16, 1998.

Rehearing Denied June 25, 1998.*

Certiorari Denied March 22, 1999.**

---

* ERICKSON, J., would *GRANT* Petition of Plaintiff-Appellee.

** Justice HOBBS and Justice BENDER would grant as to the following issues:

Whether an individual who placed her attorney license on "inactive status" in the mid-1980s and had no plans of reactivating it was a "lawyer" within the meaning of § 16–10–103(1)(k), 6 C.R.S. (1997), the statute governing challenges for cause in criminal cases; *alternatively stated,* whether an individual who is "no longer eligible to practice law" under C.R.C.P. 227 because her attorney license has, since the mid-1980s, been placed on "inactive status," in nevertheless "a person currently licensed to practice law" within the meaning of *Binkley v. People,* 716 P.2d 1111 (Colo.1986), and therefore, a "lawyer" within the meaning of § 16–10–103(1)(k).

Whether the court of appeals reversibly erred by ignoring the plain language of the habitual criminal statute, and thereby extending the liability of habitual offenders beyond what is intended by the General Assembly.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, John Daniel Dailey, Deputy Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, James Grimaldi, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge MARQUEZ.

Defendant, Willie Glenn Daniels, appeals from a judgment of conviction entered upon jury verdicts finding him guilty of first degree sexual assault and three counts as an habitual criminal. Defendant also appeals his sentence of 64 years. We reverse and remand for further proceedings.

The prosecution's evidence indicated that, in January 1995, defendant approached the victim as she was entering her car parked on a Denver street. He pushed her into the passenger seat, got into the driver's seat, threatened the victim's life, and sexually assaulted her.

Prior to trial, defendant moved to suppress statements made following his arrest as well as the victim's out-of-court identification. Following a hearing, the trial court denied defendant's motions.

### I.

Defendant first contends that the trial court committed reversible error by denying his challenge for cause of a prospective juror. We agree.

Section 16–10–103(1), C.R.S.1997, provides: The court shall sustain a challenge for cause on one or more of the following grounds:

. . . .

(k) The juror is a lawyer . . . .

■ The statute does not automatically exempt or disqualify lawyers from jury service, but provides both sides the opportunity to challenge for cause, regardless of whether the challenging party has established actual bias on the part of the juror. The term "lawyer," as used in this section, "means a person who is currently licensed to practice law in one of the jurisdictions in the United States." *Binkley v. People,* 716 P.2d 1111, 1111 (Colo.1986).

In Colorado, an attorney may transfer to inactive status by filing written notice with the office of attorney registration. Once on inactive status the attorney is no longer eligible to practice law. C.R.C.P. 227.

■ However, an attorney who transfers to inactive status retains his or her license to practice law and is a "lawyer" under § 16–10–103(1)(k). *People v. Pope,* 944 P.2d 689 (Colo.App.1997).

In *Pope,* a division of this court held that the trial court's denial of the defendant's challenge for cause of an attorney who had applied for inactive status constituted reversible error. The court reasoned that even if the prospective juror was transferred to inactive status, he was still licensed to practice law and was a "lawyer" under § 16–10–103(1)(k). The reasoning of *Pope* is applicable here.

Here, the prospective juror stated that she had been admitted to practice law in 1974 and has been a member of the Colorado bar on inactive status since the mid–1980s. The trial court denied defendant's challenge for cause. The court reasoned that, under the rule, a challenge for cause must be sustained only if the juror is a licensed and practicing lawyer. Defendant used his sixth and final peremptory challenge to excuse the juror. *See* § 16–10–104, C.R.S.1997.

We conclude that the prospective juror still retained her license to practice law, and that denial of defendant's challenge for cause is reversible error. *See Binkley v. People, supra; People v. Pope, supra.*

## II.

Among issues that may arise on retrial is defendant's contention that he was denied his constitutional rights of due process and fair trial when the trial court failed to suppress the victim's out-of-court identification and the in-court identification based thereon. We perceive no error.

■ In considering a claim that the identification procedures used violated due process, the court must decide whether the resulting identification is reliable under the totality of the circumstances surrounding the confrontation. *People v. Montanez,* 944 P.2d 529 (Colo.App.1996).

The court must consider: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the time which has elapsed between the crime and the confrontation. *People v. Walker,* 666 P.2d 113 (Colo. 1983).

■ An identification procedure is unduly suggestive if it tends to interject an unnecessary risk of misidentification. *People v. Loyd,* 751 P.2d 1015 (Colo.App.1988).

At trial, the victim testified she first saw defendant when he approached her outside of her apartment building. She further testified that she was in the car with defendant for approximately one hour, and during this time, he sexually assaulted her.

When the victim reported the assault to the police, she identified her assailant's race and gave information as to his height, weight, and age. According to her statement, he was not wearing a mask but was wearing a hat and gloves. While defendant contests the sufficiency of this description, he does not assert it is inaccurate.

The victim did not report the assault for two weeks. However, she testified that because she went to school in the neighborhood where she was attacked and because her car had out-of-state license plates, she feared that defendant could retaliate against her if she reported the incident.

The police showed the victim a computer-generated photo lineup which included defen-

dant's picture and the victim immediately picked defendant's photograph. She stated that she was "100 percent sure" defendant was the individual who had assaulted her and that she would "stake her life on it."

We conclude that, under the totality of the circumstances, the victim's identification of defendant was reliable.

■ We also reject defendant's contention that the photo lineup was unduly suggestive. The defendant's photo did not "leap out" as different from the rest. *See People v. Bolton*, 859 P.2d 311 (Colo.App.1993). Accordingly, the trial court did not err in failing to suppress the identification, and such identification will again be admissible on retrial.

■ Defendant also contends that the trial court denied his right against self-incrimination when it admitted into evidence statements concerning a sexual assault that occurred "around Sixth Avenue." We conclude that the statements were made voluntarily and with proper advisement under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ If the defendant initiates further communication with the police, and there is no interrogation by the police, then any statements made by the defendant at that time will not be found to have been obtained in violation of the defendant's Fifth Amendment rights. Only when the defendant-initiated conversation involves interrogation must the prosecution show that there was a knowing and intelligent waiver by the defendant before any of his or her statements may be admitted at trial. *People v. Ross,* 821 P.2d 816 (Colo.1992). Volunteered statements are not considered to be the result of police interrogation. *People v. Hammons,* 771 P.2d 1 (Colo.App.1989).

Here, following his arrest, defendant was read his advisements under *Miranda v. Arizona, supra,* in the police car and again at the police headquarters prior to the interrogation. Defendant voluntarily waived his rights and signed a written advisement stating that he voluntarily agreed to speak with the police.

Later, defendant asked to speak with a homicide detective with whom he was acquainted. The detective testified that defendant asked him whether he thought the police would show his picture to the victim of a sexual assault at a Denver location some distance from where the assault at issue occurred. When the detective responded that the police would show the victim his picture, defendant admitted committing that sexual assault. Defendant then told the detective that he had committed a sexual assault on a 20–year–old woman in a car "around Sixth Avenue." Defendant then stated that he thought that the conversation could not be used against him because only the two of them had been present. The detective informed defendant that his assumption was incorrect.

■ At the suppression hearing, the trial court held that *no readvisement was necessary* because there was no evidence that the detective questioned defendant about a different crime. Further, even if defendant's discussion of a different crime was prompted by anything the detective had said, there was no requirement that defendant be readvised of his *Miranda* rights. The record supports this ruling. *See People v. Horn,* 790 P.2d 816 (Colo.1990)(defendant must be in custody and subject to interrogation for the *Miranda* requirements to be applicable).

### III.

■ Defendant next contends that the trial court acted without jurisdiction when it tried him on the three habitual criminal counts. Specifically, he argues that the prosecution did not file an information alleging any habitual counts, and thus, it was reversible error for the trial court to try him on these counts. We disagree.

Section 13–16–101(2), C.R.S.1997, provides, in pertinent part:

Every person convicted in this state of any felony, who has been three times previously convicted . . . . shall be adjudged an habitual criminal. . . . Such former conviction or convictions and judgment or judgments shall be set forth in apt words in the indictment or information.

Technical defects in the form of the information do · not require reversal unless the substantial rights of the defendant are prejudiced. *People v. Young*, 923 P.2d 145 (Colo.App.1995).

When a defendant receives a written motion to amend an information and the motion is not defective, contains all the essential elements of the crime, and is sufficiently specific to give the defendant notice of the charge and allow the court to pronounce · judgment, then a failure ·to file the amended information does not result in a lack · of jurisdiction. *People v. Thomas*, 832 P.2d 990 · (Colo.App.1991)(failure to file amended information charging · defendant with felony of which he was ultimately convicted).

Here, the parties dispute whether the amended information was filed or lost. At the suppression hearing, the prosecution asked the trial court if it had received its motion to amend the information adding the habitual criminal counts. The trial court was not aware if any motion had been filed. Defendant's counsel stated that she had received transcripts of two of the pleas and was ready at that time to argue the motion to amend the information adding the habitual criminal counts. Defendant's counsel later stated that she had received the prosecution's motion to amend well in advance of the hearing and that defendant had no objection to the motion. The court then granted the motion to amend.

Regardless of whether the motion to amend the information was filed or was lost, defendant was aware of it. Thus, he was put on adequate notice and could properly defend himself during the habitual criminal phase of the trial. *See People v. Thomas, supra.*

## IV.

Defendant argues that trial court erred in sentencing him to a term of 64 years imprisonment. We conclude that the court properly interpreted the sentencing statute.

\*\*\* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

Section 16–13–101(2), provides, in pertinent part:

Every person ... adjudged an habitual criminal ... shall be punished for the felony offense of which such person is convicted ... for a term of four times the maximum presumptive range pursuant to section 18–1–105, C.R.S., for the class of felony of which such person is convicted.

The presumptive sentencing range for first degree sexual assault, a class three felony, is between four and twelve years imprisonment. Section 18–1–105(1)(a)(V)(A), C.R.S.1997. However, first degree sexual assault is an extraordinary risk of harm crime. Section 18–1–105(9.7)(b)(I). For extraordinary risk of harm crimes which constitute a class three felony, the maximum presumptive range is increased by four years. Section 18–1–105(9.7)(a). Thus, first degree sexual assault has a maximum presumptive range of 16 years.

Defendant contends that, under § 16–13–101(2), he must be sentenced to four times the maximum presumptive range for the "class of felony" listed in § 18–1–105. He argues that since first degree sexual assault is a class three felony, the maximum presumptive range is 12 years. However, § 18–1–105(9.7) explicitly provides that for certain crimes, one of which is first degree sexual assault, the maximum sentence in the presumptive range is increased by four years.

The meaning of any one statutory section must be gathered from a consideration of the entire legislative scheme. *People v. Greymountain*, 952 P.2d 829 (Colo. App.1997).

We conclude that the trial court properly interpreted the sentencing statutes in sentencing defendant, and thus, under a similar result on retrial, the same sentence would be appropriate.

In view of our disposition, we do not address defendant's remaining contentions.

Accordingly, the judgment of conviction is reversed and the cause is remanded for a new trial.

KAPELKE, J., concurs.

ERICKSON, J.,\*\*\* dissents.

and § 24–51–1105, C.R.S.1997.

Justice ERICKSON dissenting:

I respectfully dissent.

The majority reverses defendant's conviction and sentence because the trial court denied a defense challenge for cause of a prospective juror. The juror, whom defendant excused by the use of a peremptory challenge, was a lawyer on inactive status. I disagree that granting the challenge for cause was mandated by the statute.

Section 16–10–103(1), C.R.S.1997, does not automatically exempt or disqualify a lawyer from jury service, but provides a basis for challenging a juror who is a lawyer from jury service without establishing bias or prejudice.

Section 16–10–103(1) was construed in *Binkley v. People*, 716 P.2d 1111 (Colo.1986), when a defense challenge of a prospective juror for cause was denied. The juror was a law graduate and had passed the Montana bar, but had allowed her license to expire. The Colorado Supreme Court upheld the denial and affirmed Binkley's conviction.

A different result was reached in *People v. Pope*, 944 P.2d 689 (Colo.App.1997). There, a prospective juror, who was a lawyer, was challenged for cause. The juror stated that he had applied for inactive status, but had not received confirmation that his application had been granted. The trial court denied the challenge for cause, and the court of appeals reversed on the basis that there had been no showing that the administrative requirements for obtaining inactive status had been satisfied.

To the extent that *People v. Pope, supra*, may be construed beyond the facts in that case, I view it as in conflict with *Binkley v. People, supra*, and would decline to follow it.

Here, the prospective juror had been admitted to the Colorado bar in 1974, but had been on inactive status since the mid–1980s. Based upon *Binkley v. People, supra*, I would consider such an individual not to be a "lawyer" within the meaning of § 16–10–103(1). I would uphold the trial court's denial of the challenge for cause, and would affirm defendant's conviction and sentence.

The trial court is required to exclude, apart from a showing of bias or enmity, only those individuals who are licensed and currently practicing law. An attorney who is on inactive status is not eligible to practice law unless, and until, granted permission to return to active status. C.R.C.P. 227(A)(6) and C.R.C.P. 227(A)(7); *People v. Newman*, 925 P.2d 783, 784 (Colo.1996) (censuring attorney for improperly (1) implying "that he was licensed to practice law in Colorado even though he was on inactive status" and (2) engaging in the practice of law while on inactive status); *People v. Cassidy*, 884 P.2d 309 (Colo.1994) (selling living trust packages while on inactive status constitutes the unauthorized practice of law).

*Binkley v. People, supra*, equated a lawyer under the statute with a person who provides legal advice and who is licensed and is practicing as an attorney and counselor at law. The prospective juror here was not such a person. Thus, the trial court properly denied the defense challenge for cause.