QUESTION PRESENTED AND CONCLUSION
Issue 1: Are Colorado's elected district attorneys term limited as "nonjudicial elected official[s]" for purposes of the constitutional term limits provisions of Amendment 17?
Answer 1: Yes. District attorneys are considered nonjudicial elected officials of a subdivision of the State of Colorado. The history of Amendment 17 indicates that it was the intent of the proponents that all officials who are elected by the people would be subject to the term limits provisions of Amendment 17. District attorneys are elected in partisan elections like other elected officials. It might be argued that district attorneys are "judicial" officials because the office of the district attorney is provided for under Article VI of the Colorado Constitution which is entitled "Judicial Department." However, nothing in the history of Article VI indicates that, by including the district attorneys in Article VI, the framers of the Constitution intended that district attorneys be considered judicial officials. District Attorneys are considered by the courts to be members of the executive, and not the judicial, branch of State government. Treating district attorneys as "judicial" officials would violate the separation of powers doctrine embodied in Colo. Const.
Art. III. Although district attorneys do perform some quasi-judicial functions, this factor is not determinative for purposes of Amendment 17. Other elected officials, who also exercise quasi-judicial functions for some purposes, are subject to Amendment 17. District attorneys also perform administrative and investigatory functions that are not quasi-judicial in nature.
Issue 2: Do Amendment 17 term limits apply to terms of office that began prior to January 1, 1995, or to terms of office that result from interim appointments made to fill partial terms?
Answer 2: The term limitations of Amendment 17 are calculated prospectively, i.e., for purposes of calculating the two or three term limitation of Amendment 17, only those terms of office which came into being as a result of the 1994 general election or thereafter are counted. In addition, the term limitations of Amendment 17 have no application to partial terms of office, but rather, apply only to full terms of office.
 BACKGROUND
On November 8, 1994, the voters of the State of Colorado passed Amendment 17, an initiative imposing term limits on federal representatives, members of the State Board of Education and the University of Colorado Board of Regents, and on all other "nonjudicial elected official[s]" of any county, city, town, or other political subdivision of the State. Amendment 17 became effective upon the Governor's proclamation on January 19, 1995, and is included in the Colorado Constitution in Art. XVIII:
 In order to broaden the opportunities for public service and to assure that elected officials of governments are responsive to the citizens of those governments, no nonjudicial elected official of any county, city and county, city, town, school district, service authority, or any other political subdivision of the State of Colorado, no member of the state board of education, and no elected member of the governing board of a state institution of higher education shall serve more than two consecutive terms in office, except that with respect to terms of office which are two years or shorter in duration, no such elected official shall serve more than three consecutive terms in office. This limitation on the number of terms shall apply to terms of office beginning on or after January 1, 1995. For purposes of this Section 11, terms are considered consecutive unless they are at least four years apart.
Colo. Const. Art. XVIII, § 11(1). Amendment 17 limits to two consecutive terms in office a "nonjudicial elected official" of any "political subdivision of the state of Colorado." Thus, the question presented turns on the following two issues: (1) whether judicial districts are considered "political subdivisions"; and (2) whether district attorneys are "nonjudicial" elected officials.
 ANALYSIS
Discussion of Issue 1
 Should Colorado's elected district attorneys be considered "nonjudicial" elected official[s] for purposes of the constitutional term limits provisions of Amendment 17?
A. District Attorneys are Elected Officials of a PoliticalSubdivision of the State.
Colorado Constitution, Art. VI, § 10, divides the State of Colorado into judicial districts:
 (1) The state shall be divided into judicial districts. Such districts shall be formed of compact territory and be bounded by county lines. The judicial districts as provided by law on the effective date of this amendment shall constitute the judicial districts of the state until changed. The general assembly may by law, whenever two-thirds of the members of each house concur therein, change the boundaries of any district or increase or diminish the number of judicial districts.
Colorado Constitution, Art. VI, § 13, provides for the election of a district attorney for each judicial district:
 In each judicial district there shall be a district attorney elected by the electors thereof, whose term of office shall be four years. District attorneys shall receive such salaries and perform such duties as provided by law.
Thus, under the Colorado Constitution, judicial districts are divisions of the state, formed for the purpose of carrying out functions of the state, and district attorneys are elected for each of these districts to "perform such duties as provided by law."
Furthermore, the offices of the district attorneys are treated as political subdivisions of the state for various purposes under Colorado law. See C.R.S. §§ 20-1-307, 24-53-101(5) (1999) (offices of the district attorneys treated as political subdivisions of the State for purposes of public employees' social security); C.R.S. §20-1-110 (1999) (district attorneys authorized to enter into intergovernmental contracts).
Therefore, I conclude that the office of the district attorney in its respective judicial district is a political subdivision of the State of Colorado.
B. District Attorneys Are Nonjudicial Elected Officials of aPolitical Subdivision of the State of Colorado and, as such, TheyAre Not Exempt From the Term Limits Provisions of Amendment 17.
The next question is whether district attorneys are "nonjudicial" elected officials within their respective political subdivisions as that phrase is used in Colo. Const. Art. XVIII, § 11. This question must be answered in the affirmative.
In 1990, Colorado voters passed an initial term limits initiative which applied to state representatives, state senators, the governor, lieutenant governor, secretary of state, state treasurer and attorney general. See Colo. Const. Art. IV, § 1(2), Art. V., § 3(2), and Art. XVIII, § 9a. According to its proponents, Amendment 17 was an attempt to "fill in the gaps" in term limits left by the previous term limits initiative. The proponents of Amendment 17 saw term limits as "a method of keeping elected officials from viewing their positions as lifetime or career jobs. By forcing turnover, new people will be able to enter the political scene and bring fresh ideas into the legislative branch of the government and to local governments. Extending term limits to local officials . . . represents the completion of the term limits concept in Colorado." An Analysis of 1994 Ballot Proposals, Legislative Council Research Publication No. 392 (1994). If district attorneys are exempted from the provisions of Amendment 17, they would be the only elected officials in Colorado who would not be term limited. Nothing in the language of Amendment 17 indicates an intent to treat district attorneys differently than other elected officials.
The history regarding Amendment 17 is very limited. However, the little history that exists indicates that the office of the district attorney was intended to be encompassed within the scope of elected officials to which Amendment 17 applied. C.R.S. §1-40-105(1) requires that a draft of every initiative petition for a proposed amendment to the state constitution be submitted by the proponents to the directors of the Legislative Council and the Office of Legislative Legal Services (hereinafter jointly referred to as "Legislative Directors") for review and comment. The submission of such draft initiative petitions serves several purposes. The first is to make sure the intent and objective of the proponents in proposing the amendment is understood. The second is to aid the proponents in determining the language of their proposal. The third is to make the public aware of the proposal's contents.
Pursuant to C.R.S. § 1-40-105(1), the proponents of Amendment 17 twice submitted their proposed draft of Amendment 17 to the Legislative Directors for such review and comment. In accordance with C.R.S. § 1-40-105(1), the Legislative Directors' comments to the proponents of an initiative must be rendered at a meeting open to the public. Thus, two § 1-40-105(1) public meetings were held on Amendment 17, one on May 2, 1994 (which lasted in excess of an hour, 1:34 p.m. until 2:42 p.m.) and the other on May 4, 1994 (which lasted only 37 minutes, 11:03 a.m. until 11:40 a.m.). Similarly, pursuant to C.R.S. § 1-40-106(1), the Title Board must hold a public meeting at which a title, submission clause and summary of a proposed initiative are fixed. Unfortunately, no audio tape recordings of any of these hearings exist. Thus, in researching the history of Amendment 17, this office has had to rely on the files maintained by the Legislative Directors. SeeCarrara Place v. Bd. of Equalization, 761 P.2d 197, 203
(Colo. 1988) ("The legislative council's interpretation, while not binding, provides important insight into the electorate's understanding of the amendment when it was passed.").
On April 29, 1994, the Legislative Directors submitted their written comments on the proposed amendment, which was worded, in pertinent part, as follows:
 "In order to broaden the opportunities for public service and to assure that elected officials of local government are responsive to the citizens of those local governments, no nonjudicial elected official of any county, city and county, city, town, school district, service authority or any other political subdivision of the state of Colorado shall serve more than two consecutive terms in office . . ."
In its comments of April 29, Legislative Council interpreted this language as follows:
 "If this measure passes, it appears that the only elected officials in Colorado not subject to term limits would be members of the board of regents of the University of Colorado and members of the state board of education (and any other elected officials later exempted by the voters of a political subdivision). Is this the intent of the proponents?" (emphasis added).
In response to the comments of April 29, on May 3, 1994, the proponents submitted a revised amendment that added the "board of regents of any state university" as additional elected officials to which term limits would apply:
 "In order to broaden the opportunities for public service and to assure that elected officials of local government are responsive to the citizens of those local governments, no nonjudicial elected official of any county, city and county, city, town, school district, service authority, BOARD OF REGENTS OF ANY STATE UNIVERSITY, or any other political subdivision of the state of Colorado shall serve more than two consecutive terms in office . . ."
On May 4, 1994, the Legislative Directors provided the following comment on the May 3 submission of the proponents:
 "If this measure passes, it appears that the only elected officials in Colorado not subject to term limits would be members of the state board of education (and any other elected officials later exempted by the voters of a political subdivision). Is this the intent of the proponents?" (emphasis added).
In response to the comments of May 4, the proponents again changed the language of the amendment to add "no member of the state board of education." After the review and comment process, the language of Amendment 17 initiative, as submitted by the proponents to the Title Board, read as follows:
 "In order to broaden the opportunities for public service and to assure that elected officials of local government are responsive to the citizens of those governments, no nonjudicial elected official of any county, city and county, city, town, school district, service authority, or any other political subdivision of the state of Colorado, no member of the state board of education, and no elected member of the governing board of a state institution of higher education shall serve more than two consecutive terms in office . . ."
From this history, it appears that both the Directors of the Legislative Council and the Office of Legislative Legal Services thought that district attorneys were included within the scope of Amendment 17 because the only elected officials they thought were excluded by the language were members the State Board of Education and Board of Regents. The fact that the proponents revised the language of their initiative to include the two types of elected officials that Legislative Council opined had escaped inclusion in the term limits initiative is evidence that the intent of Amendment 17 was to term limit every elected official, including the district attorneys.
Because the office of the district attorney is established in the "Judicial Department" article of the Colorado Constitution, Article VI, § 13, it might be argued that the district attorney is a "judicial" rather than a "nonjudicial" official and thus exempt from the provisions of Amendment 17. This office acknowledges that district attorneys do resemble judicial officers in two respects: the location of their constitutional authority in the judicial section of the Colorado Constitution, and in their performance of certain quasi-judicial functions. Thus, each requires a more detailed examination.
Unfortunately, there is no history to provide guidance in determining why the drafters of the Colorado Constitution decided to place the provisions relating to district attorneys in Article VI of the Constitution. Despite a detailed review of theProceedings of the Constitutional Convention, 1875-1876 (Smith-Brooks Press, State Printers 1907), pursuant to which the Colorado Constitution was adopted, this office was unable to locate any discussion whatsoever of the provision relating to district attorneys.
Thus, in deciding whether district attorneys are "nonjudicial" or "judicial" officials within the meaning of Amendment 17, resort must be made to general rules of statutory construction. Campbellv. Orchard Mesa Irr. Dist., 972 P.2d 1037, 1039 (Colo. 1998) (construing the phrase "local government" appearing in Colo. Const. Art. X, § 20). In this regard, the language in issue must be viewed not in isolation, but in context, in order to give consistent, harmonious, and sensible effect to all parts of the constitution. People v. Saucerman, 926 P.2d 130 (Colo.App. 1996).See also People v. Daniels, 973 P.2d 641, 646 (Colo.App. 1998) ("The meaning of any one statutory section must be gathered from a consideration of the entire legislative scheme.").
Other than the fact that the district attorneys provision is found in Article VI of the Colorado Constitution, there does not appear to be any basis for distinguishing district attorneys from other elected officials. District attorneys are selected in the same manner as other term limited elected officials in Colorado. For instance, district attorneys are elected to office as partisan political candidates, in the same manner as other partisan officers of the executive branch who are covered under the term limits provisions of Amendment 17, including the Regents of the University of Colorado and members of the State Board of Education. Nominations for district attorney candidates are made in primary elections by political parties, in the same manner as nominations for other state officers, the Regents, and county officers. C.R.S. § 1-4-502(1) (1999). District attorney candidates may also place their names on the primary election ballot by petition, like members of the General Assembly or other district offices greater than a county office. C.R.S. § 1-4-801(2)(b) (1999). District attorneys are elected to office in the State general election in the same manner as the regents and state board members. C.R.S. § 1-4-204 (1999). In the case of a tie vote, the law specifies that district attorney candidates be selected for office by lot in the same manner as regents and state board members. C.R.S. § 1-11-101(2) (1999). Vacancies in the office of district attorney are filled by the governor until the next general election after the vacancy occurs. C.R.S. § 1-12-204
(1999).
Selection of district attorneys by partisan election stands in stark contrast to the nomination system used for vacancies in judicial offices. In Colorado, judges are selected by appointment of the governor from a list of nominees submitted by the relevant judicial nominating commission. Colo. Const. Art. VI, §§ 20, 24. Judges then continue to serve unless voted out of office in periodic retention elections. Colo. Const. Art. VI, § 25. Consequently, district attorneys more closely resemble other term-limited executive officers than they do judicial officers exempted by Amendment 17.
Although district attorneys are elected from judicial districts whose formation is authorized in Article VI, the Colorado Supreme Court has consistently held that district attorneys are not members of the judiciary. Considering district attorneys to be members of the judiciary would violate the separation of powers doctrine enshrined in the Colorado Constitution. Article III of the Colorado Constitution divides the powers of state government into three distinct branches or departments, the executive, the legislative, and the judicial, and directs that "no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others". Colo. Const. Art.III. The Colorado Supreme Court has repeatedly held that the doctrine of separation of powers compels separation of the judicial and prosecutorial functions:
 `The prohibition against judicial intervention in or control of the exercise of prosecutorial discretion flows from the doctrine of separation of powers.' People v. Thorpe, 641 P.2d 935, 938 (Colo. 1982). The prosecutor, not the court, is charged with the duty to prosecute individuals for violations of criminal laws. People v. District Court, 632 P.2d 1022, 1024 (Colo. 1981). A prosecutor has broad discretion `to determine who shall be prosecuted and what crimes shall be charged.' Id. In order to preserve the required separation of powers, decisions of this nature `may not be controlled by judicial intervention.' Id.
People in Interest of J.A.L., 761 P.2d 1137, 1139 (Colo. 1988).See People v. Hughes, 946 P.2d 509, 516 (Colo.App. 1997) ("in order to preserve the required separation of powers, a prosecutor's charging decision may not be controlled or limited by judicial intervention"); People v. Zapotocky, 869 P.2d 1234, 1244
(Colo. 1994) ("the decision to request dismissal of pending criminal charges is within the district attorney's discretion, and this decision may not be controlled or limited by judicial intervention"). In People v. Thorpe, 641 P.2d 935, 939 (Colo. 1982), the Colorado Supreme Court found that the district attorney, even though an officer of the court, is "nevertheless a member of the executive department and acting as such when exercising his discretion in choosing what charges to file and in what court they should be filed."
Because of the doctrine of separation of powers, the Colorado Supreme Court has consistently held that district attorneys, although elected from judicial districts, are members of the executive branch of government. In Beacom In and For SeventeenthJudicial District., Adams County v. Board of County Com'rs ofAdams County, 657 P.2d 440 (Colo. 1983), the district attorney contended that a law placing approval of the district attorney's budget within the discretion of the board of county commissioners violated the separation of powers doctrine. Contending that the district attorney was a part of the judicial branch of government, the district attorney argued that the board had no choice but to approve salaries of judicial employees within the county because the doctrine of separation of powers required an independent judiciary.
The Colorado Supreme Court disagreed, holding:
 The district attorney, although elected from a judicial district as provided in Colo. Const. Art. VI, § 13, is not a member of the judiciary. Rather, the district attorney is an executive officer of the state.
Id. at 445. See People v. District Court, 632 P.2d 1022, 1024
(Colo. 1981) ("It is clear that while the district attorney is an officer of the court, as is any member of the bar, he is not a judicial officer nor a part of the judicial branch of government. The district attorney belongs to the executive branch of government"); People v. District Court, 527 P.2d 50, 52 (Colo. 1974) ("While he is an officer of the court as any other attorney, a district attorney is not a judicial officer not a part of the judicial branch of government. A district attorney belongs to the executive branch."); People v. Macrander, 828 P.2d 234, 240 (Colo. 1992) ("the district attorney is a member of the executive department"); People v. District Court, 767 P.2d 239, 240 (Colo. 1989) ("The district attorney is part of the executive branch of government . . ."); People v. Wright, 742 P.2d 316, 319 (Colo. 1987) ("A district attorney is a member of the executive branch of government.").
The specific language of Amendment 17 states that it applies to "nonjudicial elected official[s]." However, Colorado case law observes a distinction between such terms as "judicial officers," and "officers of the court," and reserves references to "judicial officers" for judges or "the court." People v. Proffitt,865 P.2d 929, 933 (Colo.App. 1993).
Consequently, although district attorneys are elected from judicial districts whose formation is authorized in Art. VI (the Judicial Department), district attorneys are not considered "judicial officers" under Colorado law.
Finally, courts have sometimes described district attorneys as exercising "quasi-judicial" functions for some purposes. These descriptions arise in discussion of the concept of absolute immunity for prosecutors from damage claims in civil cases. SeeImbler v. Pachtman, 424 U.S. 409 (1976) ("It is the functional comparability of their judgments to those of a judge that has resulted in both grand jurors and prosecutors being referred to as `quasi-judicial' officers, and their immunities being termed quasi-judicial as well"). While it is true that district attorneys are entitled to quasi-judicial immunity while performing some functions, quasi-judicial immunity does not mean that district attorneys are judicial officers exempt from the term limits provision of Amendment 17.
In Colorado, the seminal case on prosecutorial immunity is Higgsv. District Court, 713 P.2d 840 (Colo. 1985). In Higgs, plaintiff brought a malicious prosecution claim against a deputy district attorney alleging that she had initiated and maintained a criminal action against him without probable cause and that she was motivated by malice. The district attorney contended that she was absolutely immune from suit because her actions were quasi-judicial in character.
In reviewing the type of functions for which a prosecutor is absolutely immune from liability, the Colorado Supreme Court found that prosecutors were only absolutely immune for those actions "intimately associated with the judicial phase of the criminal process," such as initiating a criminal prosecution and presenting the State's case at trial. Id. at 851. However, the Court found that not all of a district attorney's official actions were entitled to absolute immunity. The Court adopted the functional approach to determine whether the prosecutorial conduct at issue is absolutely or only qualifiedly immune. Thus, the court found that a distinction must be drawn between a prosecutor's "advocatory" functions, which are closely related to the judicial process and thus are absolutely immune, and his "investigative" and "administrative" functions, which have a more attenuated connection with the judicial process and are therefore only qualifiedly immune. Id. at 853. The Court held that in regard to her participation in the photo identification procedure, the Crim. P. 41.1 Nontestimonial Identification Order, and the Arrest and Search Warrant Affidavits, the deputy district attorney in question was not entitled to quasi-judicial immunity, but only to qualified immunity. Id. at 863.
Thus, it is clear that district attorneys engage in an extensive range of functions that the courts do not consider to be quasi-judicial. For instance, district attorneys are required by law to provide legal advice and a legal defense to county officers and employees upon request. C.R.S. § 20-1-105 (1999). Additionally, many executive branch officers perform some quasi-judicial functions as part of their statutory duties, and are entitled to absolute immunity in their performance of those functions. Even such clearly non-judicial entities as the State Board of Medical Examiners are entitled to quasi-judicial immunity when performing specific quasi-judicial functions. Horwitz v.State Board of Medical Examiners, 822 F.2d 1508, 1515 (10th Cir. 1987). This fact, however, does not make them judicial officers. Consequently, the fact that district attorneys are entitled to assert quasi-judicial immunity in the performance of some limited functions of their office is insufficient to establish that they are judicial officers exempt from term limits under Amendment 17.
For the above reasons, I conclude that district attorneys are nonjudicial elected officials of a political subdivision of the State of Colorado and, as such, are subject to the term limits provisions of Amendment 17.
Discussion of Issue 2
 Do Amendment 17 Term Limits Apply to Terms of Office That Began Prior to January 1, 1995 or to Terms of Office That Result from Interim Appointments Made to Fill Partial Terms?
In determining how the Amendment 17 term limit provisions apply to the district attorney or other elected officials, we are guided by general principles of constitutional interpretation. First, the plain language is controlling. See Colorado Ass'n of PublicEmployees v. Lamm, 677 P.2d 1350, 1353 (Colo. 1984) ("Where the language of the Constitution is plain and its meaning clear, that language must be declared and enforced as written.").
 [C]ourts first look to the statutory language itself, giving words and phrases their commonly accepted and understood meaning . . . . [I]f courts can give effect to the ordinary meaning of the words adopted by a legislative body, the statute should be construed as written since it may be presumed that the General Assembly meant what it clearly said.
Resolution Trust Corp. v. Heiserman, 898 P.2d 1049, 1053-54 (Colo. 1995). Thus, a cardinal rule of statutory construction is that plain language needs no interpretation; alternative constructions that are contrary to the plain wording of the statute must be rejected.
Second, constitutional interpretation must be done in a manner "to give effect to the expression of the will of the people contained in constitutional amendments adopted by them." In reInterrogatories Propounded by Senate Concerning House Bill 1078,189 Colo. 1, 7, 536 P.2d 308, 313 (1975); see also Tivolini TellerHouse v. Fagan, 926 P.2d 1208, 1211 (Colo. 1996) (the intent of the voters must be considered). To determine the intent of the electorate, the words of the amendment must be examined and given their plain and natural meaning. Zaner v. City of Brighton,917 P.2d 280, 283 (Colo. 1996). The amendment should be read as a whole and must be read consistently with other related provisions. Id.
A. Terms of Office That Began Prior to January 1, 1995
The first step in construing the practical application of the constitutional provision at issue here is to examine the actual language of the provision. Amendment 17 expressly provides that "[t]his limitation on the number of terms shall apply to terms of office beginning on or after January 1, 1995." This language is unambiguous.
When a term of office begins is specified by Colorado statute. C.R.S. Section 1-1-201 provides that "the regular terms of office of all state, congressional district, and county officers shall commence on the second Tuesday of January next after their election, except as otherwise provided by law."
In applying the plain and natural meaning test to the language used in Amendment 17 — "terms of office beginning on or after January 1, 1995" — it is clear that this language applies to those elected officials who, as a result of success in the 1994 general election, would begin their term of office, as specified in C.R.S. section 1-1-201, after January 1, 1995.
Amendment 17, by its own express language, does not apply to terms of office being served by officeholders as of the date of the 1994 general election because the terms of those offices did not begin
on or after January 1, 1995. Rather, they began at some date prior to January 1, 1995. Thus, for purposes of this term limits provision, it does not matter how many terms of office an officeholder may have held prior to January 1, 1995. The term limitations of Amendment 17 are calculated prospectively, i.e., they are applicable only to officeholders who were elected to terms of office during the 1994 general election or thereafter.
B. Terms of Office That Result from Interim Appointments Made toFill Partial Terms
Another question which has arisen with respect to the application of Amendment 17 is whether it applies to terms of office that result from interim appointments made to fill a vacancy.
The introductory clause to Colo. Const. Art. XVIII, § 11(1) provides that the intent of the term limits provision was "to broaden the opportunities for public service and to assure that elected officials of government are responsive to the citizens of those governments." The provision continues by providing that "no nonjudicial elected official . . . shall serve more than two consecutive terms in office. . . ." As stated in section IB above, the proponents of Amendment 17 saw term limits as "a method of keeping elected officials from viewing their positions as lifetime or career jobs. By forcing turnover, new people will be able to enter the political scene and bring fresh ideas into the legislative branch of the government and to local governments." AnAnalysis of 1994 Ballot Proposals, Legislative Council Research Publication No. 392 (1994).
Amendment 17 imposes a general limitation of "two consecutive terms in office" for those officials whose terms of office are more than two years in duration. For those elected officials whose terms of office are for two years or less, Amendment 17 increases the number of terms of office from two to three terms. While the provision several times refers to "terms" of office, it makes no reference to partial terms of office. This lack of language, in and of itself, is an indication that Amendment 17 does not apply to partial terms of office.However, to assist in understanding the scope of Amendment 17, it is instructive to look at similar term limits provisions passed by the people. In 1990, the people of the State of Colorado passed an initial term limits initiative that applied to State and Federal elected officials. The 1990 term limits initiative contained language that expressly addressed partial terms of office. Such language provided that any person "appointed or elected to fill a vacancy in the [office] and who serves at least one-half of a term of office shall be considered to have served a term in that office for purposes of this subsection . . . ." See Colo. Const. Art. IV, § 1(2), Art. V., § 3(2), Art. XVIII, § 9a. The language of Amendment 17 replicates the language of the 1990 initiative in all substantive respects, except with respect to the language relating to partial terms of office, which was omitted from Amendment 17. The fact that such language was included in a prior initiative, but was not included by the proponents as part of Amendment 17, is evidence of an intent not to have Amendment 17 term limitations apply to partial terms. See Russello v. United States, 464 U.S. 16, 23,104 S.Ct. 296, 300 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").
The exclusion from Amendment 17 of a provision relating to partial terms, similar to that used in the 1990 initiative, under these circumstances, demonstrates that Amendment 17 does not apply to partial terms.
Therefore, I conclude that the term limitations of Amendment 17 apply only to full terms of office.
 SUMMARY
For purposes of the term limits provisions of Amendment 17, district attorneys are nonjudicial elected officials of a subdivision of the State of Colorado. Nothing in the language or history of Amendment 17 indicates that district attorneys were intended to be exempt from its blanket term limits provisions. On the contrary, the little history that exists indicates that it was the intent of the proponents of Amendment 17 that all officials who are elected by the people would be subject to the term limits provisions of Amendment 17. District attorneys are elected in partisan elections like other elected officials and are considered by the courts to be members of the executive, and not the judicial, branch of State government. While it might be argued that district attorneys are "judicial" officials because the office of the district attorney is provided for under Article VI
of the Colorado Constitution which is entitled "Judicial Department," there is nothing in the history of Article VI to indicate that, by including the district attorneys in Article VI, the framers of the Constitution intended that district attorneys be considered judicial officials. To interpret the inclusion of district attorneys in Article VI as converting district attorneys to "judicial" officials, would violate the separation of powers doctrine embodied in Colo. Const. Art. III. Although district attorneys do perform some quasi-judicial functions, this factor is not determinative for purposes Amendment 17 because other elected officials who would not be considered "judicial" officials also exercise quasi-judicial functions for some purposes.
The term limitations of Amendment 17 are calculated prospectively, i.e., only those terms of office which came into being as a result of the 1994 general election or thereafter are counted. In addition, the term limitations of Amendment 17 have no application to partial terms of office, but rather, apply only to full terms of office.
Issued this 9th day of February, 2000.
KEN SALAZAR Attorney General
CHRISTINE M. ARGUELLO Deputy Attorney General
TONY DYL Assistant Attorney General