**The PEOPLE of the State of Colorado,
Plaintiff-Appellee,**

v.

**Janice BINKLEY, Defendant-Appellant.**

No. 82CA0931.

Colorado Court of Appeals,
Div. III.

March 1, 1984.

Rehearing Denied March 29, 1984.

Certiorari Granted Aug. 20, 1984.

J.D. MacFarlane, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Wade H. Eldridge, Denver, for defendant-appellant.

KELLY, Judge.

Janice Binkley was convicted of theft over $200 and conspiracy to commit theft over $200. In her appeal of those convictions, she contends that the trial court erred in failing to advise her of her right to testify, in imposing time limitations on voir dire examination of prospective jurors, in denying her challenge for cause to a prospective juror, and in measuring the costs of the stolen merchandise by its retail rather than its wholesale price. We affirm.

## I.

■ Asserting plain error, the defendant contends that this court established a rule in *People v. Curtis*, 657 P.2d 990 (Colo. App.1982) (cert. granted January 24, 1983) requiring a trial court to advise a defendant of the constitutional right to testify and to ascertain whether the defendant knowingly and intelligently waives this right. Neither the defendant nor her attorney in this case explicitly waived the right to testify.

*People v. Ullerich*, 680 P.2d 1306 (Colo. App.1983) presented the same question and is controlling. We there held that where the defendant had not raised this issue in the motion for new trial, and there was no allegation or evidence that the waiver was not made knowingly, intelligently, or voluntarily, an appellate court may not speculate about the reason or reasons underlying the defendant's failure to testify, and the failure of the trial court to inquire is not plain error.

## II.

Binkley argues that the trial court erred in denying her challenge for cause to a prospective juror on the ground that the juror was a lawyer. We conclude that there was no error.

During voir dire examination, it was discovered that a prospective juror had received a law degree from the University of Montana in 1942. She was licensed to practice law until 1946, when she allowed the license to expire.

Binkley's attorney challenged the prospective juror for cause as a "lawyer" under § 16–10–103(1)(k), C.R.S. (1978 Repl. Vol. 8) and Crim P. 24(b)(1)(XI). The trial court denied the challenge; Binkley then exercised a peremptory challenge to excuse the juror, Crim.P. 24(d), and exhausted her allotted peremptory challenges.

Section 16–10–103(1)(k) and Crim P. 24(b)(1)(XI) state, among other things, that a trial court shall sustain a challenge for cause if "[t]he juror is a lawyer ...." The People argue that, in this context, the word "lawyer" encompasses only those persons licensed to practice law. We agree.

It is the constitutional duty of the General Assembly to provide by law for the exemption from jury service of certain persons or classes of persons, *Colo. Const.*, Art. II, Sec. 23, which it has discharged generally with the enactment of the Uniform Jury Selection and Service Act, § 13–71–101, et seq., C.R.S. This statute, as supplemented by the Colorado Rules of Jury Selection and Service, contains no provisions for excuse or disqualification of persons from jury service on account of educational or professional status. Section 13–71–109, C.R.S., delineates the fundamental grounds for challenges for cause, *People v. Lewis*, 180 Colo. 423, 506 P.2d 125 (1973), and only those persons under the age of 18 years, not citizens of the United States or residents of the county, who are neither literate nor conversant in English, who are mentally or physically disabled, or who have lost the right to vote through criminal conviction are statutorily disqualified.

Section 16–10–103(1), which has also been promulgated as Crim.P. 24(b)(1), augments the provisions of the Uniform Act, and specifies the particular situations in which

a prospective juror in a criminal case may be challenged for cause. Even a superficial examination of these grounds reveals that they are of two classes: Those in which the trial court has no discretion but to dismiss the prospective juror, and those in which dismissal of the prospective juror is discretionary. This same dichotomy existed at common law.

"At the common law challenges to the poll were for principal cause, and to the favor, and the facts being ascertained or admitted, the former were determined by the court, as matter of law, and the latter was determined by triers, as matter of fact. In either case, the facts upon which the challenge was based were to be ascertained by triers, if any dispute arose concerning them, and in the case of a principal challenge, the triers proceeded no further. The fact being found, the law raised a manifest presumption of partiality, and the juror was set aside. Not so, however, upon the challenge to the favor, in which the question of indifferency was left to the judgment of the triers, to be determined upon the facts found by them.... In modern practice triers have not been called, and the fact, as well as the law, has been determined by the court; but it is considered that this circumstance does not furnish ground for disregarding the distinction between the principal causes of challenge and challenges to the favor. *State v. Howard,* 17 N.H. [171] 191. The fact upon which the challenge for principal cause was based was required to be entered of record, in order that the judgment of the law might be pronounced upon it. The fact being ascertained by triers, or by the court, acting in the place of triers, the law furnished the conclusion.

"In the case of a challenge to the favor, the fact being ascertained, the matter of indifferency was still to be determined by the triers, or by the court acting in the place of triers. In one case the law declared the juror to be incompetent, when the fact was found to exist; in the other the fact was evidence of bias or

favor, upon which the triers or the court must determine whether the juror was indifferent." *Solander v. People,* 2 Colo. 48, 58 (1873).

While the common law grounds for challenges for cause are now superseded by legislative provisions, the analytical distinctions between challenges for principal cause and challenges to the favor remain. The challenge provided in § 16–10–103(1)(k), that the "juror is a lawyer," partakes of the nature of one for principal cause, there being no discretion reposed in the trial court, once the fact has been established, but to dismiss the challenged juror. Thus, the General Assembly has, in effect, declared that one who occupies the professional status of "lawyer" is irrebuttably presumed to be biased in criminal cases.

▪ While the wisdom of this enactment is not subject to judicial review, it necessarily results in the reduction *pro tanto* of the representative cross-section of the community which is an essential component of the Sixth Amendment guarantee of trial by an impartial jury. *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). Both the legislative and the judicial trend is toward expansion of the available pool of qualified jurors, *see Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); *ABA, Standards Relating to Juror Use and Management,* Standard 6 and Commentary (1983), and, absent a showing of enmity or bias, we perceive no reason why those who are educated in the law are not as qualified to serve as jurors as are members of any other professional group. Hence, we hold that the word "lawyer," as used in § 16–10–103(1)(k), includes only those persons licensed to practice law. *See* § 2–4–203(1), C.R.S. (1980 Repl.Vol. 1B).

▪ This is not to say that persons educated in the law, but not licensed to practice law, are immune to challenges for cause. A prospective juror who is learned in the law but who is nevertheless unlicensed to practice, for whatever reason, may be challenged under the provisions of § 16–10–103(1)(j) and Crim.P. 24(b)(1)(X).

But, for a challenge to be successful under these provisions, there must be a showing that the prospective juror's legal education has produced a state of mind resulting in enmity or bias toward the defendant or the state. There was no such showing here, and the trial court did not err in denying the challenge for cause.

### III.

■ Binkley argues that her conviction under § 18–4–401(2)(c) and § 18–2–201, C.R.S. (1978 Repl.Vol. 8) was improper since the value of the stolen overcoats measured by their wholesale cost was under $200.

This case falls within the rule posited in *People v. Lindsay*, 636 P.2d 1318 (Colo. App.1981), in which we noted that:

"An article in a retail outlet has a value significantly different from that which it had in the hands of the wholesaler. Retail price therefore is the better evidence of value. *People v. Irrizari*, 5 N.Y.2d 142, 182 N.Y.S.2d 361, 156 N.E.2d 69 (1959); *Maisel v. People*, [166 Colo. 161, 442 P.2d 399 (1968)]. Once the retail price of allegedly stolen items from a retail outlet has been established, the wholesale price becomes irrelevant, and the defendant should not be allowed to submit such evidence."

Since *Lindsay* was decided under the same statutory section and involved almost identical facts, it controls the present case.

*Burns v. People*, 148 Colo. 245, 365 P.2d 698 (1961), upon which defendant relies, is not applicable. It permits consideration of replacement cost only in the absence of evidence of market value.

### IV.

Binkley finally argues that the trial court erred in placing a time restriction on voir dire of prospective jurors, and that she was prejudiced by this restriction on her questioning of prospective jurors for racial prejudice.

Prior to commencement of voir dire, the trial court, without objection, authorized each side to spend a total of twenty minutes for voir dire. After defense counsel had conducted voir dire for twenty-five minutes, the court called counsel to the bench and told him to "wrap it up." After another three minutes, the trial court terminated voir dire and asked defense counsel "to sit down."

■ The purpose of voir dire examination is to enable counsel to determine whether any prospective juror possesses beliefs which would cause bias so as to prevent a fair and impartial trial. *People v. Mackey*, 185 Colo. 24, 521 P.2d 910 (1974). While the defendant has the right to inquire into possible prejudice, *Aldridge v. United States*, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054 (1931), Crim.P. 24(a) also permits the trial court, within its discretion, to limit voir dire examination if it is repetitious, irrelevant, unreasonably lengthy, abusive, or otherwise improper.

■ When voir dire examination was terminated, Binkley's attorney was interrogating the prospective juror concerning racial prejudice. The purpose of voir dire is to determine whether a juror is biased or prejudiced in any way, and the inquiry by defendant's counsel revealed nothing to suggest that this juror harbored any racial prejudice. The trial court's limitation has not been shown to have unreasonably precluded Binkley's inquiry into juror impartiality.

We have considered Binkley's other contentions of error and find them to be without merit.

The judgment is affirmed.

BERMAN, J., concurs.

TURSI, J., dissents.

TURSI, Judge, dissenting.

I respectfully dissent to Part II of the majority opinion.

Section 16–10–103(1)(k), C.R.S. (1978 Repl.Vol. 8) and Crim.P. 24(b)(1)(XI) state in pertinent part that a trial court shall sustain a challenge for cause if "[t]he juror is a lawyer ...." There is no legislative or case authority defining the term "lawyer" as used in this statute and rule. However, in the absence of a technical or particular meaning, the terms in a statute are to be

construed according to their common and generally accepted meaning. Section 2–4–101, C.R.S. (1980 Repl.Vol. 1B). *See Harding v. Industrial Commission,* 183 Colo. 52, 515 P.2d 95 (1973).

In *People ex rel. Colorado Bar Ass'n v. Taylor,* 56 Colo. 441, 138 P. 762 (1914), the court stated: "Webster defines lawyer as: 'One versed in the law, or a practitioner of law ....'" Similarly, *Black's Law Dictionary* 799 (rev. 5th ed. 1979) defines lawyer as "[a] person learned in the law; as an attorney, counsel, or solicitor; a person licensed to practice law." Thus, the term "lawyer" is not limited to a licensed practitioner of law. Rather, the term includes persons who are learned in the law.

In viewing § 16–10–103(1)(k), I find no reason for limiting the term "lawyer" to currently licensed practitioners. If the General Assembly wished such a narrow interpretation of the term, it would have so specified.

As I perceive it, the rationale for § 16–10–103(1)(k) is to prevent a jury from being dominated by the opinion of a juror learned in the law. The legislative concern, that the presence of a lawyer during the deliberations of a jury may tend to impinge upon the domain of the court as sole neutral articulator of the law, is a reasonable one. This danger is not eliminated by the fact that the lawyer is unlicensed by choice, suspension, or disbarment.

Therefore, I would conclude that the juror, having received a Juris Doctorate Degree, is clearly learned in the law and therefore falls within the definition of the term "lawyer" as used in § 16–10–103(1)(k). The fact that the juror is not currently licensed to practice law is insufficient to defeat the conclusive statutory presumption of bias. Thus, the trial court erred in finding that the prospective juror was not a "lawyer." *See Nailor v. People,* 200 Colo. 30, 612 P.2d 79 (1980).

Where, as here, the challenge for cause is based upon status, the trial court must sustain the challenge without regard to any actual bias on the part of the prospective juror. *People in Interest of R.A.D.,* 196 Colo. 430, 586 P.2d 46 (1978).

I would reverse the judgment of conviction and remand for a new trial.