Opinion by Judge WEBB.
¶ 1 Secrecy of jury deliberations and juries free of bias are both core values of our jury system. But where a defendant seeks to prove that a juror exhibited racial bias during deliberations, these values conflict. Resolving this conflict is a matter of first impression in Colorado.
¶ 2 A jury convicted defendant, Miguel Angel Pena-Rodriguez, of unlawful sexual contact and harassment. He now challenges the judgment of conviction, contending the trial court committed multiple errors involving the jury. Defendant's primary contention concerns one juror's alleged failure to disclose racial bias, constituting juror misconduct.
¶ 3 We conclude that CRE 606(b) renders juror affidavits describing statements of racial bias made during deliberations inadmissible, and we decline to hold CRE 606(b) unconstitutional as so applied because defendant failed to conduct specific voir dire on racial bias. Rejecting defendant's other contentions, we affirm.
I. Background
¶ 4 Defendant was charged with attempted sexual assault on a child, unlawful sexual contact, and harassment based on his contact with two teenage girls. During voir dire, the trial court and counsel questioned the venire on several topics, including, as relevant here, whether any of the potential jurors:
• Had "any feeling for or against" either party;
• "Are" in law enforcement or had family or close friends in law enforcement;
• Could not "render a verdict solely on the evidence presented at trial and the law," without regard to "any other ideas, notions, or beliefs about the law";
• Had taken "law classes of any kind";
• Thought this would not be a "good case" for them to serve as "a fair juror";
• Wanted to discuss "anything else" privately with the court.
Defendant's assertion of misconduct involves H.C., whose only response to these questions was that he had taken classes in real estate and contract law. He agreed to put aside this knowledge when rendering his verdict and was sworn in as Juror 11.
¶ 5 The prosecution relied on pretrial and in-court identification of defendant by the victims, but presented no physical evidence. Defendant's sole witness testified to having been with defendant at a different location when the charged offenses occurred. The jury convicted defendant of unlawful sexual contact and harassment but could not reach a verdict on the sexual assault charge.
¶ 6 After the jury returned its verdict and was dismissed, two jurors told defense counsel that a juror-later identified as Juror 11-had made racially biased statements during deliberations. Defendant moved for access to all of the jurors' contact information. Despite receiving affidavits from defense counsel stating the "who, what, when, and where" of the allegation, as the trial court had requested, the court refused to grant "carte blanche" access to jurors. Instead, it ordered:
• Defendant would specify the gender of the jurors who made the allegations;
• The trial court would then permit defense counsel to contact jurors of that gender, provided that the contact was limited to identifying the two jurors who made the allegations;
• Defense counsel could then secure affidavits from the two jurors addressing only what statements the allegedly biased juror had made concerning his bias.
*466 Without objection, defendant complied with this procedure, which resulted in two juror affidavits.
¶ 7 The first affidavit quoted Juror 11 as having said that he thought defendant "did it because he's Mexican and Mexican men take whatever they want." This affidavit referenced unspecified "other statements" made by Juror 11 about "Mexican men being physically controlling of women because they have a sense of entitlement and think they can 'do whatever they want' with women."
¶ 8 Similarly, the second affidavit indicated that Juror 11 had said that he "believed that the defendant was guilty because in his experience as an ex-law enforcement officer, Mexican men had a bravado that caused them to believe they could do whatever they wanted with women." The affidavit also averred that Juror 11 had said that "where he used to patrol, nine times out of ten Mexican men were guilty of being aggressive toward women and young girls." According to this affidavit, Juror 11 also said that he "did not think the alibi witness was credible because, among other things, he was 'an illegal.' "
¶ 9 The trial court agreed to hold an evidentiary hearing on whether Juror 11 had misrepresented information during voir dire. However, because the court determined that Juror 11 had not been asked about racial bias during voir dire, the hearing would be limited to Juror 11's law enforcement experience and why he had not responded when asked about such experience. Defendant objected that the scope of the hearing was too narrow, arguing that Juror 11 was asked about racial bias. The court overruled both objections.
¶ 10 During the evidentiary hearing, Juror 11 testified that a distant relative was a law enforcement officer and that he had friends in law enforcement. Juror 11 only had a vague recollection of being asked about his law enforcement background, and said that any question did not "pointedly ask [ ]" about past employment. He said that he did not intentionally misrepresent his past employment, but thought that his law enforcement experience "forty years ago" was irrelevant.
¶ 11 The trial court found that while Juror 11 had misrepresented his law enforcement background during voir dire, the misrepresentation was inadvertent. Defendant does not appeal this ruling. Finding that Juror 11's law enforcement experience was too remote to show actual bias against defendant, the trial court refused to grant a new trial.
II. Denial of Motion for New Trial
¶ 12 The record refutes defendant's contention that the trial court abused its discretion in finding that Juror 11 was not specifically asked about racial bias in voir dire. Thus, we conclude that the court properly limited the evidentiary hearing to Juror 11's law enforcement connections. Defendant has not appealed the trial court's finding that Juror 11 made no deliberate misrepresentations about those connections. And, because the record also supports the trial court's finding that Juror 11's law enforcement connections did not create actual bias, we further conclude that the court properly denied defendant's motion for new trial.
A. Standard of Review
¶ 13 Post-trial rulings involving alleged juror misconduct are reviewed for an abuse of discretion. People v. Mollaun, 194 P.3d 411, 416 (Colo.App.2008). To abuse its discretion, a court's decision must be "manifestly arbitrary, unreasonable, or unfair, or based on an erroneous view of the law." Id. A court has not abused its discretion if the record provides some support for its action. Cf. People v. Harlan, 8 P.3d 448, 464 (Colo.2000) (finding that, despite voir dire irregularities, because the record provided support for the trial court's rulings, the trial court did not abuse its discretion), overruled on other grounds by People v. Miller, 113 P.3d 743 (Colo.2005).
B. Law
¶ 14 The United States and Colorado Constitutions guarantee criminal defendants a right to trial by an impartial jury. U.S. Const. amends. VI, XIV ; Colo. Const. art. II, §§ 16, 25 ; Dunlap v. People, 173 P.3d 1054, 1081 (Colo.2007). While voir dire is not a constitutional right, People v. Reynolds, 159 P.3d 684, 688 (Colo.App.2006), Colorado court rules allow defendants to examine potential *467 jurors for partiality. See Crim. P. 24(a). If a juror is asked a material question during voir dire and fails to answer that question truthfully, the court may grant a new trial. People v. Borrelli, 624 P.2d 900, 903 (Colo.App.1980) ; see People v. Rael, 40 Colo.App. 374, 375-76, 578 P.2d 1067, 1068 (1978). However, to obtain a new trial based on juror misrepresentation, counsel must have asked specific questions about the subject of the misrepresentation during voir dire. See Seventh Day Adventist Ass'n of Colorado v. Underwood, 99 Colo. 139, 141-42, 60 P.2d 929, 930 (1936) (refusing to address in a motion for new trial the assertion that potentially biased jurors prevented a fair trial, as no "specific questions" were asked about this bias in voir dire).
¶ 15 Further, not all juror misrepresentations merit a new trial. Allen v. Ramada Inn, Inc., 778 P.2d 291, 292 (Colo.App.1989). If the misrepresentation was inadvertent, a defendant must show the juror's "actual bias" to obtain a new trial. People v. Dunoyair, 660 P.2d 890, 896 (Colo.1983).
¶ 16 Actual bias requires more than an abstract belief in a defendant's guilt. Beeman v. People, 193 Colo. 337, 340, 565 P.2d 1340, 1342 (1977). Rather, the circumstances must show a "personal and emotional" connection between the juror and the defendant. Id. For example, in Beeman v. People, 193 Colo. at 339, 565 P.2d at 1341, a defendant in a rape case had previously frightened a juror's pregnant daughter. The juror was so upset that she asked the defendant's employer to reprimand him. Id. Additionally, the weapon allegedly used in the rape was missing from the daughter's home. Id. at 339, 565 P.2d at 1341-42. Given all of these close connections, the court awarded a new trial. Id. at 338-39, 565 P.2d at 1341. Other examples of the close ties required to find actual bias include:
• A juror's husband, son, and father-in-law being police officers and the juror stating she would "end up" being biased. People v. Prator, 833 P.2d 819, 821 (Colo.App.1992), aff'd, 856 P.2d 837 (Colo.1993) ;
• A juror having a "close association with not only the law enforcement establishment, but also with this crime scene, and with the co-employee who had attended to this murder victim." People v. Rogers, 690 P.2d 886, 888 (Colo.App.1984) ;
• A juror's husband being a police officer, the prosecution witness being "familiar" to her, and the prosecutor having been the juror's former teacher. People v. Reddick, 44 Colo.App. 278, 280, 610 P.2d 1359, 1360 (1980).
In contrast, juror ties such as the following were insufficient:
• A juror recognizing the victim as her daughter's acquaintance. People v. Drake, 841 P.2d 364, 367 (Colo.App.1992) ;
• A juror realizing a witness testifying to "tangential" facts was a former acquaintance. Dunoyair, 660 P.2d at 895-96.
C. Application
1. Limiting the Hearing to Law Enforcement Connections
¶ 17 After reviewing the voir dire record,[1] the trial court ruled that Juror 11 had not been asked whether he harbored racial bias. The court recognized that Juror 11 was asked about feelings "for or against" defendant and whether this would be a good case to serve as a "fair juror." However, it concluded that these questions were not specific enough to find that Juror 11 had misrepresented information about his possible bias in voir dire. Observing that parties "almost always" pose specific questions about ethnicity during voir dire, the court noted that defense counsel's declining to do so may have been intentional.
¶ 18 The record contains some support for these conclusions. For example, before voir dire, the trial court told defense counsel that "in the past, some of our jurors have been vocal in their dislike of people who aren't in the country legally. I don't know if that's an *468 issue for you or your client, but you may want to address it." Yet, during the extensive voir dire, defense counsel did not mention race, national origin, or immigration status. And unlike the questions about law enforcement, which several jurors answered broadly, no venire member responded when asked about having feelings "for or against the defendant."
¶ 19 Thus, we decline to disturb the finding that because Juror 11 was not asked about racial bias in voir dire, defendant could not explore this subject at the hearing. Here, the trial court found that there "were no questions asked about the defendant's ethnicity" during voir dire. Based on this finding, the court impliedly concluded that Juror 11 could not have been expected to respond about any potential racial bias, the subject that defendant sought to explore in the hearing. This is a factual determination, distinct from our conclusion below that defendant waived his as-applied constitutional challenge to CRE 606(b), an issue we resolve de novo.
¶ 20 Although some of the questions asked might have elicited a response concerning racial bias, our review is limited to whether the record presents any basis for the trial court's decision. See Harlan, 8 P.3d at 462 ("In a noncapital case, we will overturn the trial court's resolution of a challenge for cause only if the record presents no basis for supporting it."). Here, the record presents such a basis. Therefore, the trial court did not abuse its discretion in limiting the evidentiary hearing to Juror 11's law enforcement connections.
2. "Actual Bias" Not Caused by Law Enforcement Connections
¶ 21 Defendant accepts the finding that Juror 11's misrepresentation of his law enforcement background was inadvertent, but contends that the trial court abused its discretion in finding no actual bias. However, defendant does not explain, nor does the record suggest, any such actual bias arising from Juror 11's limited law enforcement experience.
¶ 22 Juror 11's previous employment as an officer and general acquaintances with officers do not involve a personal relationship with any party or witness. Further, his employment in law enforcement ended more than four decades before trial, making it highly improbable that such service would have overlapped with any party working on the case. Juror 11's relationships with present law enforcement personnel do not suggest bias because they are limited to some friends and a distant relative, none of whom has any connection to the case.
¶ 23 In addition, law enforcement witnesses played a relatively minor role in the case. See Dunoyair, 660 P.2d at 896 ("Such a presumption [of actual bias] would be particularly inappropriate where, as here, the witness's testimony relates to facts which are tangential to the alleged criminal act."). At trial, the victims testified to the assault and their identification of defendant near the crime scene. They also identified defendant in the courtroom. Two close family members of the victims also testified to events immediately before and after the assault. Beyond describing the victims' crime scene identifications and investigation of other trial witnesses, the main role of the law enforcement witnesses was to describe having arrested defendant in the area shortly after the assaults were reported. They also defended having failed to gather fingerprint evidence at the scene.
¶ 24 Therefore, we conclude that the trial court did not abuse its discretion in denying defendant's motion for new trial.
III. Admissibility of Juror Affidavits Under CRE 606(b)
¶ 25 Defendant next contends that because the statements of bias attributed to Juror 11 in the juror affidavits showed deliberations were corrupted by extraneous prejudicial information or an outside influence, he is entitled to a new trial. We reject this contention because we conclude that the statements do not fall within the exceptions to CRE 606(b), and thus the record contains no admissible evidence of Juror 11's bias.
A. Standard of Review
¶ 26 Interpretation of court rules is an application of law, requiring de novo *469 review. Gleason v. Judicial Watch, Inc., 2012 COA 76, ¶ 14, 292 P.3d 1044. However, whether the jury was affected by extraneous influences or outside information is a mixed question of law and fact. Kendrick v. Pippin, 252 P.3d 1052, 1064 (Colo.2011). We review legal conclusions de novo, while reviewing factual determinations for an abuse of discretion. Id.
B. Law
¶ 27 CRE 606(b)[2] broadly prevents attacks on verdicts using information from jury deliberations. Challenges to the "validity of a verdict" may not rely on:
• Any issue or statement made during deliberations;
• The effect anything has on a juror's deliberations; or
• Any mental processes related to the jury's verdict.
This limitation protects the finality of verdicts and allows jurors to deliberate without fear of reprisal, coercion, or criticism. See Stewart v. Rice, 47 P.3d 316, 322 (Colo.2002) ; People v. Kriho, 996 P.2d 158, 167 (Colo.App.1999).
¶ 28 CRE 606(b) contains three exceptions. As relevant here, juror testimony is admissible to show that "extraneous prejudicial information" was brought to the jury's attention and that "outside influence" was brought to bear on a juror.
¶ 29 A defendant is entitled to a new trial if a reasonable possibility exists that the jury verdict was tainted by extraneous prejudicial information or outside influences. Harper v. People, 817 P.2d 77, 82 (Colo.1991). However, evidence proving this prejudice is only admissible if it complies with CRE 606(b). Ravin v. Gambrell, 788 P.2d 817, 820 (Colo.1990) ; Wiser v. People, 732 P.2d 1139, 1141 (Colo.1987).
C. Application
1. "Validity of the Verdict"
¶ 30 Defendant first contends CRE 606(b) does not apply to statements made during deliberations when offered to show racial bias because the inquiry is not into the deliberative process. However, CRE 606(b) applies to evidence of statements made during deliberations offered to attack "the validity of a verdict." Here, by seeking a new trial based on juror misconduct, defendant is attacking the validity of the verdict.
¶ 31 CRE 606(b) applies broadly, Mollaun, 194 P.3d at 416, reaching "everything which relates to the jury's deliberations, unless one of the exceptions applies." Stewart, 47 P.3d at 321 (quoting Christopher B. Mueller, Jurors' Impeachment of Verdicts and Indictments in Federal Court Under Rule 606(b), 57 Neb. L.Rev. 920, 935 (1978)). It bars all "juror testimony or affidavits divulging juror deliberations, thought processes, confusion, mistake, intent, or other verdict impeaching grounds." Stewart, 47 P.3d at 322.
¶ 32 Defendant cites no Colorado case holding that parties may attack verdicts using statements made during deliberations, provided that no analysis of the deliberative process is necessary. Under CRE 606(b), three distinct categories of testimony are inadmissible during "an inquiry into the validity of a verdict," one of which is juror testimony regarding "any matter or statement occurring during the course of the jury's deliberations" (emphasis added). Because no other language in CRE 606(b) limits this broad prohibition, we do not deviate from the text of the rule. See Black v. Waterman, 83 P.3d 1130, 1136-38 (Colo.App.2003) (applying CRE 606(b) to evidence supporting a motion for new trial).
*470 ¶ 33 Therefore, we conclude that CRE 606(b) controls the admissibility of these affidavits.
2. "Extraneous Prejudicial Information"
¶ 34 Colorado courts interpret "extraneous prejudicial information" to include physical materials and specific facts not admitted into evidence, as well as legal knowledge beyond that contained in jury instructions. People v. Harlan, 109 P.3d 616, 624-25 (Colo.2005) ; Kendrick, 252 P.3d at 1064. However, such information does not include either "background professional and educational experience," Kendrick, 252 P.3d at 1066, or "personal knowledge, obtained before the trial began," People v. Holt, 266 P.3d 442, 445 (Colo.App.2011). For example, a juror's mathematics and engineering background is not extraneous. Kendrick, 252 P.3d at 1067. In contrast, specific salary estimates, not offered in evidence, introduced by a juror during deliberations to calculate damages are extraneous. Destination Travel, Inc. v. McElhanon, 799 P.2d 454, 456-57 (Colo.App.1990).
¶ 35 The Colorado Supreme Court's touchstone in identifying extraneous information is whether "the experience used by the juror in deliberations [is] part of the juror's background, gained before the juror was selected to participate in the case and not as the result of independent investigation into a matter relevant to the case." Kendrick, 252 P.3d at 1066. A clear application of this principle is People v. Harlan, 109 P.3d at 632. In finding a juror's use of a bible during deliberations extraneous, the supreme court explained:
We do not hold that an individual juror may not rely on and discuss with the other jurors during deliberation his or her religious upbringing, education, and beliefs.... We hold only that it was improper for a juror to bring the Bible into the jury room to share with other jurors the written Leviticus and Romans texts during deliberations; the texts had not been admitted into evidence or allowed pursuant to the trial court's instructions.
Id.; accord Holt, 266 P.3d at 446.
¶ 36 Here, Juror 11's alleged statements of bias during deliberations illustrated beliefs about an ethnic minority group, formed by his experiences. His opinions were not the result of an independent investigation performed after being sworn to serve on the jury. Rather, Juror 11 viewed the testimony before him through the lens of his experiences and personal beliefs. While these beliefs may be repugnant, they are no more "extraneous" to deliberation than a juror's religious beliefs, as discussed in Harlan.
¶ 37 A few cases from other jurisdictions consider racial bias "extraneous prejudicial information."[3] These cases are unpersuasive because they do not provide, nor does defendant offer, a distinction between beliefs about race and religious beliefs, as discussed in Harlan. Nor is any principle advanced that would limit this exception to racial bias. The lack of such a limiting principle would permit inquiry into juror preconceptions based on age, gender, religion, and sexual orientation. Such broad excursions into jury deliberations are "anathema" to the jury system. Kriho, 996 P.2d at 167. And faced with the specter of such inquiries, jurors would be unable to perform their public service without justifiable concern for their post-verdict privacy. Stewart, 47 P.3d at 322.
¶ 38 Therefore, we conclude that the "extraneous prejudicial information" exception is inapplicable.
*471 3. "Outside Influence"
¶ 39 Colorado follows a plain language approach to the CRE 606(b) exceptions, Stewart, 47 P.3d at 323, looking to the analogous federal rule for guidance. Id. at 321. Thus, when deciding whether the "outside influence" exception applies, a court must determine if a force outside the jury room exerted improper influence on a juror. Id. at 320. Although rarely relied on independently of the "extraneous prejudicial information" exception, this exception includes efforts to bribe a juror, threats of violence against jurors, or other means "unrelated to the internal values of the jury." 27 Charles A. Wright & Victor J. Gold, Federal Practice and Procedure § 6075 (2d ed. 1993).
¶ 40 Here, the affidavits do not suggest interference from any party outside the jury room. To the contrary, the statements at issue illustrate Juror 11's beliefs and opinions, which, as explained above, lie at the core of what should be considered "internal." Defendant makes no coherent argument why these statements made within the walls of the jury room were an "outside influence."
¶ 41 Therefore, we further conclude that the "outside influence" exception does not apply.
¶ 42 Accordingly, the juror affidavits were inadmissible under CRE 606(b).
IV. Constitutionality of CRE 606(b) As-Applied
¶ 43 Alternatively, defendant argues that, if none of the exceptions in CRE 606(b) applies, racial bias so taints a defendant's rights under the Fifth, Sixth, and Fourteenth Amendments that refusal to consider evidence of a juror's racially biased statements during deliberations renders CRE 606(b) unconstitutional as-applied. We do not decide whether considering evidence of such bias might be constitutionally required, however, because defendant waived his ability to challenge the verdict on this basis by failing to sufficiently question jurors about racial bias in voir dire.
A. Verdict Finality and Juror Privacy
¶ 44 CRE 606(b) codified common law protections of verdict finality and juror privacy, Stewart, 47 P.3d at 322, both of which are vital to the stability and freedom of the jury system. Simpson v. Darwin Lee Stjernholm, D.C., 985 P.2d 31, 35 (Colo.App.1998). Therefore, resolving an unconstitutional-as-applied challenge to CRE 606(b) requires determining what policy balance best protects trial by jury as a whole. State v. Shillcutt, 119 Wis.2d 788, 802, 350 N.W.2d 686, 693 (1984) ; see Michigan v. Lucas, 500 U.S. 145, 149, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991) (balancing policy concerns when determining the constitutionality of an evidentiary rule under the Sixth Amendment), cited with approval in People v. Aldrich, 849 P.2d 821, 825 (Colo.App.1992) ; Ravin, 788 P.2d at 820-21 (balancing policy concerns of CRE 606(b) with fairness concerns).
¶ 45 The United States Supreme Court balanced similar evidentiary and constitutional concerns in Tanner v. United States, 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987), which held that analogous Fed.R.Evid. 606(b) barred juror testimony of several jurors' intoxication during portions of the trial and deliberations. While acknowledging the Sixth Amendment right to trial by a competent jury, the majority declined to hold the rule unconstitutional as-applied. Rather, it concluded that voir dire and other factors[4] were sufficient to protect this right, despite the limitations of Fed.R.Evid. 606(b). Id. at 126-27, 107 S.Ct. 2739.
¶ 46 However, lower federal courts and state courts disagree whether the Tanner factors adequately protect a defendant's right to trial by an impartial jury where rules such as CRE 606(b) would bar evidence of a juror's racial bias. In Benally, 546 F.3d at 1240-41, the Tenth Circuit found the Tanner factors, in particular voir dire, sufficient to protect against racial bias. While the court acknowledged that some jurors might still be prejudiced, it concluded that any further protection would jeopardize "the great benefit of *472 protecting jury decision-making from judicial review." Id. at 1241. For this reason, the court declined to hold Fed.R.Evid. 606(b) unconstitutional as applied. Cf. Williams v. Price, 343 F.3d 223, 239 (3d Cir.2003) (declining on habeas petition to hold Fed.R.Evid. 606(b) unconstitutional as-applied).
¶ 47 Courts that are less confident in the protection given by the Tanner factors do not offer common reasoning. Some courts hold the analog to CRE 606(b) unconstitutional only when a juror misrepresented information about bias in voir dire. E.g., United States v. Henley, 238 F.3d 1111, 1121 (9th Cir.2001) ; State v. Thomas, 777 P.2d 445, 450-51 (Utah 1989). In effect, these courts read a constitutionally-compelled "voir dire exception" into the rule. Other courts reject this limited exception, instead conducting case-by-case analyses.[5] E.g., United States v. Villar, 586 F.3d 76, 87-88 (1st Cir.2009) ; Fisher v. State, 690 A.2d 917, 921 n. 4 (Del.1996) ; Shillcutt, 119 Wis.2d at 805-06, 350 N.W.2d at 695. At least one court suggests support for both approaches. E.g., State v. Hidanovic, 2008 ND 66 ¶¶ 24-26, 747 N.W.2d 463, 473-74 (citing with approval Henley, 238 F.3d at 1121, creating an exception for misrepresentation in voir dire, but also stating that "racial and ethnic bias cannot be condoned in any form and may deprive a criminal defendant of a right to a fair trial by an impartial jury"). And another court envisions racial bias as exempted from the rule entirely. Fleshner v. Pepose Vision Inst., P.C., 304 S.W.3d 81, 89-90 (Mo.2010) (holding that, while "[j]uror testimony about matters inherent in the verdict should be excluded," racial considerations "should have no bearing on the outcome of a trial").
B. Waiver of Constitutional Challenge to Juror Bias
¶ 48 A defendant has a constitutional right to a fair trial by an impartial jury, which may be defeated by the presence of a biased juror. People v. Lefebre, 5 P.3d 295, 300 (Colo.2000). Colorado courts recognize two forms of bias in potential jurors: "bias in fact or bias conclusively presumed as a matter of law." People v. Macrander, 828 P.2d 234, 238 (Colo.1992) (quoting United States v. Wood, 299 U.S. 123, 133, 57 S.Ct. 177, 81 L.Ed. 78 (1936) ). The latter form of bias is rooted in the potential juror's relationships or circumstances, Lefebre, 5 P.3d at 300, while actual bias is "a state of mind that prevents a juror from deciding the case impartially and without prejudice to a substantial right of one of the parties." Macrander, 828 P.2d at 238. Negative feelings against a defendant's race or ethnicity evince actual bias. Lefebre, 5 P.3d at 300.
¶ 49 While the United States Constitution guarantees the right to a fair trial by an impartial jury, it does not provide a particular test to ensure this right. Frazier v. United States, 335 U.S. 497, 511, 69 S.Ct. 201, 93 L.Ed. 187 (1948) ; Wood, 299 U.S. at 133, 57 S.Ct. 177. In Colorado, the test for juror bias is codified in section 16-10-103(1)(j), C.R.S.2012. Nailor v. People, 200 Colo. 30, 32, 612 P.2d 79, 80 (1980). This section provides that a potential juror should be excused for cause if there exists "a state of mind in the juror evincing enmity or bias toward the defendant or the state." § 16-10-103(1)(j) ; see Carrillo v. People, 974 P.2d 478, 486 (Colo.1999) (applying section 16-10-103(1)(j) when analyzing actual bias).
¶ 50 "The purpose of voir dire is to determine whether a juror is biased or prejudiced in any way." People v. Binkley, 687 P.2d 480, 483 (Colo.App.1984), aff'd, 716 P.2d 1111 (Colo.1986) ; accord Garcia v. Estate of Wilkinson, 800 P.2d 1380, 1382 (Colo.App.1990). Colorado law recognizes that the ability to challenge jurors based on voir dire is "one of the most important rights secured to an accused." Macrander, 828 P.2d at 243 (quoting *473 Pointer v. United States, 151 U.S. 396, 408, 14 S.Ct. 410, 38 L.Ed. 208 (1894) ); see Ma v. People, 121 P.3d 205, 210 (Colo.2005) ("Because a criminal defendant has the constitutional right to a fair trial by an impartial jury, see U.S. Const. amend. VI ; Colo. Const. art. II, § 16, a trial court in a criminal case must grant all valid challenges for cause.").
¶ 51 Given the important role voir dire serves in assuring impartial juries, criminal defendants have both the right and the duty to secure an impartial jury through "diligent inquiry" into potential jurors' racial bias. Maes v. Dist. Court, 180 Colo. 169, 175-76, 503 P.2d 621, 624-25 (1972), cited for this proposition in People v. Baker, 924 P.2d 1186, 1191 (Colo.App.1996), disagreed with on other grounds by Craig v. Carlson, 161 P.3d 648, 655 n. 3 (Colo.2007). Failure to adequately question potential jurors during voir dire waives both a later challenge to the juror and an attack on the verdict based on information that diligent voir dire would have uncovered. People v. Lewis, 180 Colo. 423, 427-28, 506 P.2d 125, 127 (1973) ; Ma, 121 P.3d at 209 ; People v. Asberry, 172 P.3d 927, 930 (Colo.App.2007) ; People v. Crespin, 635 P.2d 918, 920 (Colo.App.1981) ; see People v. Cevallos-Acosta, 140 P.3d 116, 121 (Colo.App.2005) (declining to find error on appeal as presumptively biased juror was not properly questioned).[6]
C. Application
¶ 52 No Colorado court has addressed whether the Tanner factors are sufficient to protect the right to a jury free of racial bias. However, we need not decide the issue here. We have upheld the trial court's factual finding that defendant did not ask about racial bias during voir dire. See part II. C.1, supra. Thus, because defendant could have asked such questions and challenged Juror 11 for cause based on his answers, defendant waived the right to assert that, as applied here, CRE 606(b) violates his right to an impartial jury.[7] See Valdez v. People, 966 P.2d 587, 594 (Colo.1998) (finding that a Batson challenge could not be considered on appeal, as it was "incumbent on the defense counsel" to raise the issue before the trial court); Honda v. People, 111 Colo. 279, 289-90, 141 P.2d 178, 184 (1943) (holding that the defendant waived any Equal Protection challenge to the exclusion of Japanese jurors from the jury because "[t]his issue he raised, not before the trial, but in his motion for a new trial, after the jury had been examined, selected and sworn and had tried the cause. This question was injected into the case too late to avail defendant anything.").
¶ 53 Defendant offers no reason to conclude here that diligent voir dire would have left his rights to a jury free of racial bias unprotected. Nor are we willing to assume that because voir dire is insufficient to protect against racial bias, waiver cannot be based on deficient voir dire. While racial issues create distinct challenges for trial counsel, many sources address conducting meaningful voir dire as to race.[8] Asking potential jurors about race may be sensitive. But appropriate lines of inquiry include asking about past experiences with racism, inquiring into positive or negative interactions with individuals of a particular race, or stating *474 that race may be an issue in this case and asking if prospective jurors would be more comfortable serving on a different case. And the court or counsel could forewarn potential jurors that, because they may be asked about bias, they have the option of being questioned in chambers. Here, similar techniques were used during defendant's voir dire, but not in the context of race.
¶ 54 Furthermore, while some prospective jurors may be hesitant to admit racial bias, prospective jurors may be hesitant to admit gender bias, religious bias, age bias, bias based on sexual orientation, or bias against a defendant's immigration status. Holding, as a matter of law, that voir dire was inadequate to address bias, racial or otherwise, would restrict section 16-10-103(1)(j), which allows challenges for cause based on bias, to personal bias against a specific defendant. Neither the statutory language nor any case supports such a restrictive approach.
¶ 55 Such a holding would defeat the core purpose of voir dire, which is to "determine whether any prospective jurors are possessed of beliefs that would cause them to be biased in such a manner as to prevent the defendant from obtaining a fair and impartial trial." People v. Robinson, 187 P.3d 1166, 1176 (Colo.App.2008) (quoting People v. Martinez, 24 P.3d 629, 632 (Colo.App.2000) ); accord Binkley, 687 P.2d at 483. And such a holding would disregard the function of voir dire to alert the court, as does a contemporaneous objection, which "has a salutary purpose in the orderly administration of justice." Scheer v. Cromwell, 158 Colo. 427, 429, 407 P.2d 344, 345 (1965).
¶ 56 Although a purpose of voir dire is to identify potential juror bias, see Binkley, 687 P.2d at 483, the dissent's assertion that "a challenge for cause to a juror's qualifications [being] waived through lack of diligence [ ] should only apply to cases where the basis for a challenge is known during voir dire" would discourage diligent voir dire concerning such bias. In a racially charged case, a defendant might avoid this subject in voir dire and gamble on a favorable verdict. In the event of an adverse verdict, the defendant could conduct post-verdict investigation of jurors and use information that might have been discovered through voir dire to attack the verdict. But a defendant is not "entitled to gamble on a more favorable verdict than that which he might otherwise have received and then, when such verdict is returned, have the option of having it set aside and calling for a new trial." Ellis v. People, 114 Colo. 334, 344, 164 P.2d 733, 737 (1945).
¶ 57 Colorado courts adhere to the rule that "[a] challenge for cause is waived if counsel does not use reasonable diligence during jury selection to determine whether the grounds for such a challenge exist." Asberry, 172 P.3d at 930. This waiver rule has never been limited, as the dissent urges, based on ignorance of what diligent inquiry could have unearthed. And our courts do not "reward ... self-induced ignorance." McGee v. Hardina, 140 P.3d 165, 167 (Colo.App.2005). Hence, we decline to adopt such a limitation.
¶ 58 Furthermore, a waiver based on counsel's failure to adequately question jurors in voir dire is not subject to the "knowing, voluntary, and intentional" standard used for waivers of certain rights by defendants, as the dissent suggests it should be. Examples of waivers subject to this standard include the right to counsel, the right of a defendant to testify, the entrance of a guilty plea, Hinojos-Mendoza v. People, 169 P.3d 662, 669 (Colo.2007), and the right to trial by jury. Id.; People v. Norman, 703 P.2d 1261, 1271 (Colo.1985) ; People v. Thompson, 121 P.3d 273, 275 (Colo.App.2005). However, "as to other rights [d]efense counsel stands as captain of the ship," Hinojos-Mendoza, 169 P.3d at 669 (quoting People v. Curtis, 681 P.2d 504, 511 (Colo.1984) ), and waiver need not be made personally by the defendant. Arko v. People, 183 P.3d 555, 558 (Colo.2008).
¶ 59 No Colorado case holds that voir dire into juror bias, exercising challenges for cause, and passing the panel for cause are decisions made only by the defendant.[9]
*475 Rather, strategic decisions about voir dire are exercisable by counsel. See People v. Moody, 676 P.2d 691, 696 (Colo.1984) (referring to decisions whether to challenge a juror as "merely a matter of trial strategy"); People v. Osorio, 170 P.3d 796, 800 (Colo.App.2007) (determining a failure to challenge a biased juror to be "sound trial strategy"). And even though such decisions implicate constitutional rights, trial counsel has the power to bind the defendant.[10] See Curtis, 681 P.2d at 511 ("We have stated that decisions committed to counsel include ... what jurors to accept or strike, and what trial motions to make. It is worth noting that these latter decisions also have a constitutional basis.") (internal citations omitted); People v. Bergerud, 223 P.3d 686, 693 (Colo.2010) ("[W]hen a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas. On issues of trial strategy, defense counsel is captain of the ship.") (internal citations omitted); People v. Rogers, 2012 COA 192, ¶ 15, 317 P.3d 1280 (Colo.App.2012) (citing Cropper v. People, 251 P.3d 434, 435 (Colo.2011) ) (acknowledging that counsel may waive a client's Sixth Amendment confrontation right).
¶ 60 Therefore, while counsel may, in fact, decide for strategic reasons not to question jurors on racial bias, a defendant cannot claim his rights were violated when an opportunity existed to protect those rights but his counsel failed to do so for tactical reasons. See People v. Mann, 646 P.2d 352, 358 (Colo.1982) ("The decision not to serve [a key witness], when there was ample opportunity, was a trial tactic, subject to the risk of backfiring, and thus the defendant is not entitled to complain that she was deprived of the right to present testimony."); People v. Peterson, 656 P.2d 1301, 1304 (Colo.1983) ("When defense counsel's strategy backfires, the resultant error cannot be urged as grounds for reversal on appeal."); People v. Rowerdink, 756 P.2d 986, 993 (Colo.1988) ("[W]e held that, when defense counsel's strategy backfires, the resultant error cannot be grounds for reversal on appeal.").[11]
¶ 61 Alternatively, even if deficient voir dire does not constitute a waiver, courts should not "resolve constitutional questions or make determinations regarding the extent of constitutional rights unless such a determination *476 is essential and the necessity for such a decision is clear and inescapable." Denver Publ'g Co. v. Bd. of County Comm'rs, 121 P.3d 190, 194 (Colo.2005) ; accord People v. Lybarger, 700 P.2d 910, 915 (Colo.1985). Here, what adequate inquiry into racial bias would have uncovered is unknowable. However, defendant asks us to create a potentially broad constitutional exception to CRE 606(b) in order to vindicate a right that he failed to protect at trial. Hence, we decline to decide what additional constitutional safeguards, if any, would be necessary, had defendant diligently performed voir dire. See Cropper, 251 P.3d at 438 (declining to hold a statute unconstitutional as-applied because the defendant did not avail herself of the constitutional protections under the statute); cf. New Safari Lounge, Inc. v. City of Colorado Springs, 193 Colo. 428, 434-35, 567 P.2d 372, 377 (1977) (finding a statute constitutional as applied to the facts in the case but not deciding whether the statute would be unconstitutional under different facts); Qwest Services Corp. v. Blood, 252 P.3d 1071, 1087 (Colo.2011) (holding that an as-applied challenge to a punitive damage award was not preserved, as no limited-purpose instruction was requested). Determining the extent that the Sixth Amendment requires protections beyond those already provided by law is neither necessary nor inescapable. Cf. Kirkmeyer v. Dep't of Local Affairs, 313 P.3d 562, 568 (Colo.App.2011) (reaching constitutionality as-applied when interpreting a statute is "inextricably intertwined" with arguments on remand, while declining to do so otherwise).
¶ 62 Therefore, we conclude that because defendant failed to inquire into racial bias in voir dire, we will not decide whether the constitutional balance requires CRE 606(b) to yield.[12]
V. Juror Access Limitations
¶ 63 Defendant contends that the trial court misapplied Crim. P. 24(a)(4) and Crim. P. 33(c) when limiting his access to jurors before the evidentiary hearing, interfering with his rights under the United States and Colorado Constitutions. However, this interference does not amount to constitutional error, and because any error in limiting access to jurors after trial was harmless, we do not reverse.
A. Standard of Review
¶ 64 Under the general harmless error standard, appellate courts reverse only when the record suggests that an error substantially affected the fairness of proceedings. People v. Gaffney, 769 P.2d 1081, 1088 (Colo.1989). Yet, if the error is of a sufficient "constitutional dimension," reversal is required unless the error is harmless beyond a reasonable doubt. People v. Smith, 121 P.3d 243, 249 (Colo.App.2005).
B. Preservation
¶ 65 The Attorney General's assertion that defendant failed to preserve this issue is unpersuasive. Defendant moved for access to all juror contact information in anticipation of seeking an evidentiary hearing into grounds for new trial. Instead, the trial court required defense counsel to detail the "who, what, when, and where" of the alleged misconduct before limiting contact to only the female jurors. Further, defendant was allowed to obtain affidavits from only the two jurors who approached defense counsel after trial, reporting that Juror 11 was racially biased. Thus, the trial court denied defendant's motion, at least in part. Therefore, defendant is able to appeal the trial court's restrictions. Cf. Resolution Trust Corp. v. Parker, 824 P.2d 102, 104 (Colo.App.1991) (finding objection to denial of motion for change of venue unnecessary for preservation on appeal).
C. Defendant's Argument
¶ 66 Defendant argues that the trial court abused its discretion by erroneously interpreting Crim. P. 33(c)[13] as requiring affidavits substantiating claims of juror misconduct *477 before allowing access to juror contact information. Defendant concedes that Crim. P. 33(c) requires a party to file supporting affidavits when moving for a new trial, but argues that the court's reliance on Crim. P. 33(c)before he moved for a new trial inappropriately barred access to jurors.
¶ 67 In addition, defendant asserts that parties should have unfettered post-trial access to jurors absent evidence of harassment or criticism of the jurors' service. For this proposition, he cites public policy considerations[14] and Crim. P. 24(a)(4).[15] Defendant also argues that Crim. P. 24(a)(4) controls beyond voir dire and compelled the trial court to give defense counsel "appropriate and necessary locating information" for the jurors post-trial.
D. Analysis
¶ 68 The United States Constitution does not guarantee a defendant the right to question jurors post-verdict. Cf. Haeberle v. Texas Int'l Airlines, 739 F.2d 1019, 1021 (5th Cir.1984) ("Federal courts have generally disfavored post-verdict interviewing of jurors."); Journal Publ'g Co. v. Mechem, 801 F.2d 1233, 1236 (10th Cir.1986) ("[C]ourts have routinely shielded jurors from post-trial 'fishing expeditions' carried out by losing attorneys interested in casting doubt on the jury's verdict."); United States v. Riley, 544 F.2d 237, 242 (5th Cir.1976) (questioning of jurors is inappropriate unless "there is some showing of illegal or prejudicial intrusion"). Defendant does not argue that we should interpret the Colorado Constitution more broadly that the United States Constitution in this regard. Thus, we discern no constitutional basis for defendant's juror access claim,[16] as opposed to misapplication of procedural rules. Hence, we apply the harmless error standard, and will not reverse unless the error substantially affected the fairness of the proceedings.
¶ 69 Assuming, while not deciding, that the trial court erred or abused its discretion in applying Crim. P. 24(a)(4) and Crim. P. 33(c), we find any error harmless. Defendant sought juror information to determine if Juror 11 had failed to disclose his law enforcement connections and possible biases in voir dire. After examining the voir dire, the court held an evidentiary hearing limited to Juror 11's law enforcement connections. Additional information that defendant could have obtained from jurors is irrelevant to the sole basis for the court's decision on the scope of the evidentiary hearing-what was asked in voir dire.
¶ 70 At the evidentiary hearing, Juror 11 was questioned about his law enforcement experience, as well as having friends and relatives who served in law enforcement. After hearing the testimony, the trial court determined that, given the high threshold to show actual bias, supra Part II.B, Juror 11's answers did not merit a new trial. We fail to understand, and defendant does not suggest, what additional questions Juror 11 would have been asked, had defendant contacted other jurors.
¶ 71 Even if defendant could have obtained from other jurors additional information of statements by Juror 11 showing actual bias, any statements made during deliberations *478 would still be inadmissible under CRE 606(b). Supra Part III. And we have declined to adopt any exception for a racially biased juror, because we agree with the trial court that defendant failed to explore this subject in voir dire. Supra Part IV. Hence, even if defendant could have obtained other statements of bias made by Juror 11 during deliberations, the result would be the same.
¶ 72 Therefore, we conclude that any error was harmless.[17]
VI. Impaneling a Numbers Jury
¶ 73 Finally, we conclude the trial court did not commit plain error by impaneling a numbers jury.
A. Standard of Review
¶ 74 When the defendant fails to object to a trial court empaneling a numbers jury, appellate review is for plain error. People v. Robles, 302 P.3d 269, 275 (Colo.App.2011) (cert. granted 2011 WL 4017945 (Sept. 12, 2011) ). Plain error requires an error that is both obvious and so undermines a trial's fairness that it casts doubt on the reliability of the conviction. Id.
B. Analysis
¶ 75 A division of this court in People v. Robles, 302 P.3d at 276, found that referring to jurors solely by number does not cast serious doubt on a trial's fairness when:
• Neither the court nor counsel commented on the use of numbers rather than names;
• There was no indication of the procedure being unusual;
• Neither the court nor counsel indicated that referring to jurors by number implied that defendant was dangerous;
• Defendant was able to conduct meaningful voir dire despite use of numbers rather than names. Id.
¶ 76 The record shows these same factors here. The trial court told counsel that it was common practice to refer to jurors solely by number and no further mention was made of this process by anyone. Also, the use of numbers did not impact the effectiveness of voir dire. Defendant does not indicate why Robles should not control and we decline to deviate from its reasoning.
¶ 77 Therefore, the trial court did not commit plain error.
VII. Conclusion
¶ 78 The judgment of conviction is affirmed.
Judge LOEB concurs.
Judge TAUBMAN dissents.

The judge who conducted defendant's trial and subsequent proceedings was different from the judge who conducted voir dire.

"Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jurors' attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying." CRE 606(b).

E.g., Tobias v. Smith, 468 F.Supp. 1287, 1290 (W.D.N.Y.1979) (conflating "extraneous prejudicial information" and "outside influence" exceptions when concluding, "[T]he statements in the juror's affidavit are sufficient to raise a question as to whether the jury's verdict was discolored by improper influences and ... they are not merely matters of jury deliberations."); State v. Hidanovic, 2008 ND 66, ¶¶ 21-27, 747 N.W.2d 463, 472-75 (mentioning granting a new trial based on the effect "extraneous" information has on an average jury, but basing admissibility on other theories). Contra United States v. Benally, 546 F.3d 1230, 1237-38 (10th Cir.2008) ; Martinez v. Food City, Inc., 658 F.2d 369, 373-74 (5th Cir.1981) ; State v. Shillcutt, 119 Wis.2d 788, 794-95, 350 N.W.2d 686, 690 (1984).

These other factors are: the court's and counsel's ability to observe jurors during trial; the ability of jurors to report misconduct by other jurors before trial; and the ability to admit nonjuror testimony to show misconduct. Tanner, 483 U.S. at 127, 107 S.Ct. 2739.

The Tenth Circuit has expressed concern about the lack of any limiting principle in a case-by-case approach: "If confidentiality can be breached whenever a court, after the fact, thinks the advantages of doing so are important enough, much of the damage has already been done." Benally, 546 F.3d at 1241. Nor have we been able to discern any limiting principle in the cases taking this approach. Hence, if an exception is made for evidence of racial bias, this exception would apply to a variety of biases, including gender, religion, and sexual orientation. See id. at 1240-41.

Other jurisdictions are in accord. See, e.g., State v. Shepherd, 2009 UT App 11, ¶ 5 (discussing the "requirement that a criminal defendant explore known areas of potential bias with a prospective juror or else be deemed to have waived objection to the juror on grounds of bias"); Holmes v. State, 65 Md.App. 428, 439-40, 501 A.2d 76, 81 (1985) ("The State says that appellant's failure to object, coupled with his expressing satisfaction with the jury impaneled, is a comparable situation which mandates the same result. Notwithstanding [that] we believe that the trial judge's failure to voir dire the jury panel as to racial bias was error, we are constrained ... to agree with the State that appellant waived that error."), rev'd, 310 Md. 260, 528 A.2d 1279 (1987).

If Juror 11 misrepresented his biases, post-trial relief could have been sought on that basis.

See, e.g., Roberto Aron et al., Trial Communication Skills § 30:4 (2d ed. 2011); Alafair S. Burke, Prosecutors and Peremptories, 97 Iowa L.Rev. 1467, 1483-85 (2012) (discussing practices that prosecutors could implement to reduce Batson challenges and ensure a fair jury); see generally Tracy L. Treger, Note, One Jury Indivisible: A Group Dynamics Approach to Voir Dire, 68 Chi.-Kent L.Rev. 549, 567 (1992) (discussing a wide variety of voir dire techniques, including proper use of racial data and ways to limit harm from racial bias).

Requiring that a defendant participate-knowingly, voluntarily, and intentionally-in voir dire and challenges for cause would be unworkable. For example, the trial court would have to fashion an advisement that explained the nuances of the tactical decisions made in voir dire. Cf. People v. Arguello, 772 P.2d 87, 94 (Colo.1989) (requiring the record to "clearly show[ ] that the defendant understands the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter" before finding a waiver of the right to counsel) (internal citations omitted). Then the court would need to obtain the defendant's consent to each proposed challenge for cause. The complexities of the tactical decisions required in voir dire, see 1 Kevin F. O'Malley et al., Federal Jury Practice and Instructions § 4:5 (6th ed. 2006) (discussing the importance of, and many strategies necessary for, analyzing the venire when selecting jurors), would leave such consent subject to dispute in postconviction proceedings.

United States v. Zarnes, 33 F.3d 1454 (7th Cir.1994), and United States v. Desir, 273 F.3d 39 (1st Cir.2001), cited in the dissent, do not suggest a different conclusion. In Zarnes, the defendant claimed that a bifurcated trial violated the Sixth Amendment. The circuit court held that the defendant had "knowingly and voluntarily" waived his claim based on a conversation with the trial court. Zarnes, 33 F.3d at 1472. The circuit court also found waiver because defense counsel had requested bifurcation. Id. (citing United States v. Joshi, 896 F.2d 1303 (11th Cir.1990) (discussing that defendants waive their Sixth Amendment challenges when counsel makes a tactical decision to consent to bifurcation)). The circuit court did not apply the "knowing [ ] and voluntar[ ]y" standard that it applied when finding personal waiver by the defendant.
Desir involved a Fed.R.Crim.P. 33 motion for postconviction relief based on "newly discovered" evidence. The defendant claimed that a juror was a personal acquaintance who knew of the defendant's criminal record, violating the right to an impartial jury. Desir, 273 F.3d at 42. The trial court determined that the defendant had recognized the juror before deliberations and, therefore, had waived his challenge. Id. at 42-43. The circuit court refused to disturb these findings, as they had record support, and upheld the trial court's denial of relief. Id. at 43. Neither court applied a "knowing and voluntary" standard to this waiver.

By discussing adverse effects of trial strategy, we do not express an opinion on how an ineffective assistance of counsel claim based on these effects should be resolved.

We take no position on whether Benally 's analysis of the Tanner factors would control appropriately preserved constitutional challenges to CRE 606(b).

Crim. P. 33(c) provides, in relevant part, "[a] motion based upon newly discovered evidence or jury misconduct shall be supported by affidavits."

E.g., Stewart, 47 P.3d at 325 ("Jurors are free to discuss any aspect of their service they care to."); Model Code of Prof'l Responsibility EC 7-29 (1983) ("Were a lawyer to be prohibited from communicating after trial with a juror, he could not ascertain if the verdict might be subject to legal challenge."). Defendant asserts that these policy concerns amount to constitutional violations. Yet, the one case defendant cites for this proposition, People v. Dillon, 739 P.2d 919 (Colo.App.1987), is inapplicable. See id. at 921 (stating ineffective assistance of counsel must be predicated on "counsel's conduct so undermin[ing] the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result").

"Orientation And Examination Of Jurors. An orientation and examination shall be conducted to inform prospective jurors about their duties and service and to obtain information about prospective jurors to facilitate an intelligent exercise of challenges for cause and peremptory challenges.... (4) Jurors shall not be required to disclose personal locating information, such as address or place of business in open court and such information shall not be maintained in files open to the public. The trial judge shall assure that parties and counsel have access to appropriate and necessary locating information." Crim. P. 24(a).

See supra note 14.

Our conclusion of harmlessness is not approval of the trial court's actions. The severe limitations on juror access seem unnecessary given defendant's legitimate interest in investigating possible constitutional violations.